NUGENT, Respondent v. QUAM, Appellant

(152 N.W.2d 371)

(File No. 10367. Opinion filed July 18, 1967)
Rehearing denied September 11, 1967

**Royhl, Benson & Beach,** Huron, for defendant and appellant.

**Morgan & Fuller, Miller, Kaye & Hanson,** Mitchell, for plaintiff and respondent.

BURNS, Circuit Judge.

Upon this appeal by defendant-driver we have for determination the question whether or not as a matter of law the negligence of the plaintiff-pedestrian was more than slight in comparison with the negligence of the driver of the automobile by which he was struck, under Chapter 149 of the 1964 Session Laws which is as follows:

> "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence."

The plaintiff, a 79 year old man, was struck by an automobile driven west by the defendant on West First Avenue approaching the intersection with Rowley Street while plaintiff was walking in a northwesterly direction across West First Avenue in the business district in the City of Mitchell a short distance south of the south crosswalk at the intersection of West First Avenue and Rowley Street which extends north and south.

The traffic at the intersection of First Avenue with Main Street located a block east of Rowley Street is controlled by electric

signals. In the block of First Avenue involved traffic moves in one lane west and one lane east with space reserved for parking on the north side and with space on the south side where parking is prohibited. The Piggly Wiggly Store from which plaintiff came immediately before crossing the avenue is located on the south side of First Avenue west of Main Street with a parking lot to the west between the store and Rowley Street. The driveway from the parking lot to First Avenue slopes down to the street level as a ramp. This driveway is west of the store and east of Rowley Street, but the record does not show the distances except for plaintiff's statement that after leaving the north door of the store "I took a few steps west where there was cars would drive in". In fact the record is devoid of any measurements or estimates of the width of the avenue, the width of the entrance to the parking lot, the distance of the point where plaintiff started to cross the avenue from Rowley Street or the distance of the alley referred to by plaintiff from Rowley Street.

The accident occurred at about 5:30 p. m. It was dusk; one witness said "hazy". Car lights were on or being turned on. First Avenue was described as a busy street with quite a few cars. The parking spaces on the north side of the avenue were full. One car was stopped on the south side of the avenue in front of the entrance to the Piggly Wiggly Store in which sat one of the eyewitnesses to the accident. Under the City ordinances pedestrians were prohibited from crossing the avenue except at the crosswalks and vehicular traffic was prohibited from driving at a speed greater than is reasonable and prudent under the conditions then existing with a proviso that in a business district such as the avenue involved an excess of fifteen miles an hour is prima facie unlawful and prima facie evidence that the speed is not reasonable and prudent.

The plaintiff came out of the north entrance of the Piggly Wiggly Store with a small sack of potatoes in one arm and groceries in the other arm, "took a few steps west" and went down the sloping driveway entrance to the parking lot to the level of the street. At this point he looked to the left or west before he started across First Avenue. He walked diagonally in a north-

westerly direction across the east lane of travel not at a cross-walk. When he got to the middle of the street he looked to the east and, as he testified, "the light came on, it looked to me like it was about in the alley. * * * I figured I could make it across." He took a few steps and was hit on his right side. He said "the middle of the car, I imagine, hit me." As the plaintiff continued across the west lane of traffic he did not look again to the east but was "looking to get across the street". Although the plaintiff stated he did not see the car this is qualified by the statement that he saw the light and as to seeing the car, "I must have". Although the plaintiff testified he was walking north and northeast "kitty-corner", the physical facts and the testimony of the eyewitnesses produced by plaintiff indicate he was confused or misstated himself and that in fact he walked in a northwesterly direction coming nearer to the south crosswalk at the south side of the intersection of First Avenue and Rowley Street as he walked across the avenue. In spite of his own statement we think the evidence warrants the more favorable view that he was nearing the crosswalk as he walked across the avenue.

█ The defendant, an engineer and a graduate of the School of Mines in 1961, left his place of employment shortly after 5:00 p.m., drove to and stopped at the post office, then drove south on Main Street to the intersection with First Avenue where the light was green. He turned right onto First Avenue and drove west in the right lane of traffic. He observed the cars parked on the north side of the avenue, but did not recall any cars on the south side. Defendant's testimony was that he was going about "fifteen miles an hour * * * more or less." He first saw plaintiff when plaintiff was "a step and a half or so south of the center line of First Street". He estimated that plaintiff was then eight to ten feet in front of the car. He applied the brakes and stopped suddenly. The plaintiff was struck by the front of the car to the right center of the hood, according to the defendant. The plaintiff was thrown to the pavement at a point fixed by the defendant as "east of the crosswalk area and * * * about in the center line of the westbound lane on West First Street". In stating defendant's testimony to furnish some details as to his

duty toward the plaintiff, we have in mind that because of the jury's verdict for the plaintiff awarding him damages, and very liberal damages, we view the evidence in the light most favorable to the verdict and draw therefrom all reasonable inferences which support the verdict. Flanagan v. Slattery, 74 S.D. 92, 49 N.W.2d 27; Hanisch v. Body, 77 S.D. 265, 90 N.W.2d 924; De-Berg v. Kriens, 82 S.D. 502, 149 N.W.2d 410. The defendant's evidence is considered only insofar as it tends to amplify, clarify or explain the evidence in support of the verdict of the jury for the plaintiff.

The fire chief testified for the plaintiff. Shortly before the accident he came out of the east door of the fire station which is located at the southwest of the intersection of First Avenue and Rowley Street. He went across Rowley Street in a northeasterly direction and was about to the sidewalk on the east side of Rowley Street and a short distance south of First Avenue when he saw the defendant's car hit the plaintiff. As he looked up he saw the car coming and saw the defendant "and just knew at the time I seen it that he was going to get hit. The car bumped him and stopped right there. Mr. Nugent went in the air, I would judge about five or six foot in the air, and then lit sitting right flat on the ground about in the neighborhood of ten to twelve foot ahead of the car, where the car knocked Mr. Nugent down". The chief went over to the plaintiff who "was sitting about in line with the north and south sidewalk on the east side of Rowley Street and a little to the north side of the west-bound traffic lane." He fixed the point of impact as ten or twelve feet east of the crosswalk. He stated that he saw the plaintiff just before he was hit and that "He wasn't looking toward the car. I think he was watching the direction he was traveling, as near as I can remember". He formed no estimate of the speed of the car.

The other eyewitness of the accident, a farmer by the name of Henry Gall, also testified for the plaintiff. He was in his car stopped opposite the north entrance of the Piggly Wiggly Store facing east. He saw the plaintiff come out of the store with a bag of potatoes and groceries in his arms, walk northwest to the ramp and down the ramp where "he first looked this way a little ways and then he looked that way and then he walked

right kitty-corner across." As the plaintiff was crossing the avenue in a northwesterly direction this witness saw the car coming from the east and "figured he was going to get hit". He observed the car for about ten feet and as to its speed stated, "To my estimate, I figured it was between twenty and twenty-five. Of course, I'm no radar machine. That's just my estimate". He said "the car come to a stop just about the time it hit Mr. Nugent * * * He really stomped the brakes down and it just rocked like that". The witness did not think the plaintiff was looking at the car when he was hit and in answer to the question "Did you notice whether he ever again looked in both directions" (after he had started across) said "Not to my knowledge". He stated that the plaintiff was not at a crosswalk when he started across the street and wasn't at a crosswalk when hit.

Another witness for plaintiff in a nearby store heard the impact, but did not see the collision. He immediately went out to where the accident occurred. The plaintiff was slightly east of the east crosswalk line of the south crosswalk and was in the westbound lane of traffic slightly "to the right of the center line". With this witness was another man who testifying for the plaintiff said that he heard the impact and "A young man came into the store quickly * * * to get a phone. Then I rushed out there, and Mr. Nugent was kind of sitting down, lying down out in the street there, in the west lane of traffic * * * and he was sitting there, and the car was parked there". "To me he was lying about on the edge of the east, the west side of the sidewalk, in a line with that."

The trial court submitted the question of defendant's negligence to the jury under appropriate instructions as to speed, lookout and control. There is ample evidence to sustain the jury's finding that the defendant's negligence was a proximate cause of the accident.

In an instruction stating the issues to be determined by the jury the court said: "The court instructs the jury that under the evidence in this case the plaintiff, in crossing First Avenue in the manner disclosed by the evidence, was guilty of negligence as a matter of law".

The court instructed the jury that "The law imposes upon the driver of any vehicle using a public highway, and upon a pedestrian, the same duty, each to exercise ordinary care to avoid causing an accident from which injury might result". This was followed by a correct statement of the rule as to lookout required by a pedestrian and the driver of a vehicle on the highway and as to the control required to be exercised by the driver. Negligence and contributory negligence were properly defined referring to the standard of care of the "ordinarily prudent and reasonable person" and the statement particularly applicable to the conduct of the parties involved, "It (ordinary care) is commensurate with existing and surrounding hazards. The greater the danger, the greater is the care required, so that a very high degree of danger calls for a very high degree of care, which, however, amounts to ordinary care in view of the situation and circumstances".

Based upon the ordinances of the City of Mitchell the court gave these instructions:

"The ordinances of the City of Mitchell provide that no pedestrian shall go from one side of the street to the other, except at a right angle and at a regular crosswalk at the end of a block, upon any street in the business section * * *."

"The ordinances further provide that every pedestrian crossing a roadway at any other point than within a marked crosswalk or an unmarked crosswalk at the end of a block shall yield the right of way to vehicles upon the roadway, provided that this provision shall not relieve the driver of any vehicle from the duty to exercise due care for the safety of pedestrians".

"The ordinances of the City of Mitchell provide that no person shall drive a vehicle upon any street * * * at a speed greater than is reasonable and prudent under the circumstances then existing; and it shall be prima facie unlawful and prima facie evidence that the speed is not reasonable and prudent, under the conditions

then existing, for the driver of any vehicle or motor vehicle to drive the same upon any street  *  *  *  at a speed exceeding the following: Fifteen miles an hour on all highways in a business district  *  *  *".

■ ■   The court correctly instructed the jury that the plaintiff was guilty of negligence as a matter of law in crossing First Avenue in the manner disclosed by the evidence. The evidence also establishes that plaintiff's negligence was a contributing cause of the accident.

Under the comparative negligence statute before amendment, SDC 1960 Supp. 47.0304-1, a plaintiff's contributory negligence did not bar recovery "when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison". This statute is the Nebraska statute which South Dakota enacted. A good analysis of the case law of South Dakota and of Nebraska as it developed in applications of this law is found in the case of Associated Engineers, Inc. v. Job, 8 Cir., 370 F.2d 633, 640. Judge Blackmun points out:

"The Nebraska court seems to hold that the character of the plaintiff's negligence is not to be determined on an absolute basis but is to be tested only with that of the defendant, that is, in order for the plaintiff to recover, his negligence must be slight only as measured with the defendant's negligence  *  *  *. The South Dakota court, on the other hand, has interpreted the statute as calling for two measurements, namely, the determination of the plaintiff's own negligence on an absolute basis and then the comparison of the plaintiff's negligence with that of the defendant."

The leading cases cited support the comment.

■   The present comparative negligence law was suggested by Judge Hanson of this court in an article entitled "Comparative Negligence" published in the July, 1962, South Dakota Bar Journal. By Chapter 149 of the 1964 Session Laws the Legislature enacted the law in the exact language proposed by Judge Hanson. As to this law Judge Hanson in his article stated

that it would change our present law in the following respects: "It would require the determination of slight negligence to be made in comparison with negligence of the defendant rather than to determine the same in comparison with the ordinary prudent man." We agree that this is the proper construction of the comparative negligence law, Chapter 149 of the 1964 Session Laws.

■■ This brings us to the problem in this case. Was the contributory negligence of the plaintiff slight in comparison with the negligence of the defendant? This language of the case of Friese v. Gulbrandson, 69 S.D. 179, 8 N.W.2d 438, still has application:

> "In common usage the epithet 'slight' means 'small of its kind or in amount; scanty; meager.' Webster's New International Dictionary. We can discern no reason for reading it in a different sense. The legislative purpose is clearly revealed. It has not sought to uproot the doctrine of contributory negligence as it exists in our law. It has sought to benefit only a particular class of plaintiffs in negligence cases, and that a very limited class. Speaking in broad terms, it may be said that the object of the legislature is to render the rule of contributory negligence inapplicable if the contributory negligence of plaintiff is small in quantum * * *".

For the part of the sentence deleted we would substitute, because of the change in the law, the words "in comparison with the negligence of the defendant". In this case the court also said:

> "Hence we have concluded that the legislature made use of the words 'slight negligence' to describe a quantum of want of such ordinary care as a reasonable man would exercise under the circumstances."

The trial court made no attempt to explain the comparative negligence rule and did not set out the language of the statute other than in the instruction to the jury as to its findings where the court said: "but if you find that it (plaintiff's negligence) was in any degree a proximate cause of the plaintiff's being struck

by the defendant's car at the time disclosed by the evidence, then the plaintiff cannot recover unless the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant; but, in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence".

The Pattern Jury Instructions prepared by a committee of the State Bar of South Dakota include the following proposed instruction on comparative negligence:

"If the jury should find the plaintiff guilty of contributory negligence, as elsewhere in these instructions defined, the plaintiff may still recover if the jury should find that such contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant. This rule has no application unless such contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant and if the jury considers that such contributory negligence of the plaintiff exceeds in any degree that which in the circumstances is slight negligence in comparison with the negligence of the defendant, the plaintiff cannot recover. If the jury should find the plaintiff guilty of contributory negligence but that under the rule just stated the plaintiff is still entitled to recover, then the damages to be awarded to the plaintiff must be reduced in proportion to the amount of the plaintiff's contributory negligence".

Although this instruction may seem to labor the rule somewhat, and the plain and concise wording of the statute would be sufficient, it has the merit of directing the attention of the jury to the rule with proper emphasis in connection with the definitions of negligence and contributory negligence.

■ Although the character of the plaintiff's contributory negligence under the present comparative negligence law is not to be determined by comparison to the care exercised by the reasonable man as an absolute standard but must be compared to the negligence of the defendant, the norm of conduct of the ordinarily reasonable and prudent man must be considered in

determining the extent to which each party fell below the standard and thus was guilty of negligence or contributory negligence; otherwise, there would be no basis for comparison. Obviously, unless both plaintiff and defendant are chargeable with negligence there can be no application of the comparative negligence law; there must be a quantum of want of ordinary care by each to compare one with the other. For this purpose it seems not only helpful but necessary to start with the standard of care of the ordinarily reasonable and prudent man, not used as an absolute standard of conduct for either one separately, but for a determination of the extent to which each fell below the standard for use in comparing the quantum of want of ordinary care exercised by the plaintiff with the quantum of want of ordinary care exercised by the defendant.

■ "The words 'reasonable man' denote a person exercising those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others. * * *" Sometimes this person (a hypothetical reasonable man) is called a reasonable man of ordinary prudence, or an ordinarily prudent man, or a man of average prudence or a man of reasonable sense exercising ordinary care. The actor is required to do what this ideal individual would do in his place. The reasonable man is a fictitious person who is never negligent, and whose conduct is always up to standard. "When a plaintiff's contributory negligence is in question, the 'reasonable man' is a man of reasonable 'prudence'. Where a defendant's negligence is to be determined, the 'reasonable man' is a man who is reasonably 'considerate' of the safety of others and does not look primarily to his own advantage". Restatement of the Law, Torts, § 283, Comment.

The comparison required in this case is between the conduct of a pedestrian and the conduct of a driver of a motor vehicle. Unlike things or attributes are compared one to another, like things or attributes one with another. The fact that the defendant was driving a motor vehicle and that the plaintiff was walking are two factors to be considered with all of the circumstances in comparing their conduct under the statute although

driving a motor vehicle on a street is a much different act than walking on a street. The statute requires that a claimant's want of care for his own protection against the risk of injury under the circumstances must be compared with the defendant's want of care under the circumstances for protection of others, whatever may be their activities or the instrumentalities used.

It is apparent from the undisputed facts and all reasonable inferences that can be drawn therefrom viewed most favorably to the plaintiff, that there was a departure from the norm, the conduct of the reasonable man, by both the plaintiff and the defendant in this action. If the care exercised by the plaintiff was a little less than that of the reasonable man, that is, his quantum of want of ordinary care was small or insignificant, and the care exercised by the defendant was considerably or substantially less than that of the reasonable man, then it would be for the jury to make the comparison, and likewise a jury question would be presented in a wider range of disproportion of fault between the parties. But when as in this case there is a departure by a claimant from the standard of conduct of the reasonable man which in quality and quantity approaches that of the defendant then to give effect to the defense of contributory negligence as modified by the comparative negligence law, the court should hold as a matter of law that such constitutes contributory negligence more than slight in comparison with negligence of the defendant.

The plaintiff did not exercise reasonable care for his own safety under the circumstances shown. The avenue in the business district was known to him to be a thoroughfare for heavy vehicular traffic at that time of day. It was dusk between day and night when headlights are relatively inefficient. The plaintiff was an old man on a hazardous course which required the alertness and dexterity of a younger person. He recognized this when he told the defendant at the scene of the accident that he was "too old to be walking in the street".

■ ■ It is the duty of a pedestrian who crosses a street between intersections to look both ways before he undertakes to cross and to keep a constant lookout for his own safety by

looking in both directions for approaching traffic. Cowan v. Dean, 81 S.D. 486, 137 N.W.2d 337; Auel v. White, 389 Pa. 208, 132 A.2d 350; Ring v. Duey, 162 Neb. 423, 76 N.W.2d 433. The evidence shows without dispute that the plaintiff kept no such constant lookout in crossing the north lane of the avenue where vehicular traffic had the right-of-way. He did not use the reasonable care required to protect himself in the dangerous position in which he placed himself, when the utmost care was required. The care required to constitute reasonable care increases with the hazard. "The greater the danger, the greater the care required, so that a very high degree of danger, calls for a very high degree of care, which, however, amounts to ordinary care in view of the situation and circumstances." Bucholz v. City of Sioux Falls, 77 S.D. 322, 91 N.W.2d 606.

■■ Under present day traffic conditions when a pedestrian undertakes to cross a street in a business section of a city at a place other than a pedestrian crosswalk it is not enough that he look once before entering a lane where vehicular traffic has the right-of-way and form an erroneous judgment as to the distance away and speed of an approaching motor vehicle and then proceed without looking again; he must continue to look effectively while crossing such lane of traffic and make such further observation as to a motor vehicle approaching him in the lane as an ordinarily careful and prudent person would do under like circumstances. A pedestrian may not escape the consequences of his own negligence on a theory that he looked and formed a judgment as to safe passage where the physical facts establish that by proceeding into the path of an oncoming vehicle the pedestrian was taking a chance no one in the exercise of ordinary care for his own safety should take. When as in this case a pedestrian before entering a lane where vehicular traffic has the right-of-way has discovered an oncoming vehicle, it is his duty to keep watch of its progress and to exercise reasonable care to avoid being struck. Malone v. Vining, 313 Mich. 315, 21 N.W.2d 144; Schlewitz v. London & Lancashire Indemnity Co., 255 Wis. 296, 38 N.W.2d 700; Cioffari v. Blanchard, 330 Mich. 518, 47 N.W.2d 718; Erickson v. Vendzah, 340 Mich. 556, 66 N.W.2d 223.

The evidence shows the defendant was negligent in respect to speed, lookout and control. The ordinance prohibited the defendant from driving at a speed greater than was reasonable and prudent under the conditions then existing and made driving in excess of fifteen miles an hour prima facie unlawful and prima facie evidence that the speed was not reasonable and proper under the conditions existing. It requires some directed effort and a light foot on the gas pedal to drive an automobile at fifteen miles an hour. From the evidence the jury could find that the defendant was driving at a speed not reasonable and prudent under the existing conditions, but the estimate by the one witness who saw the car for ten feet and estimated the speed between twenty and twenty-five is highly speculative. The other eyewitness, the fire chief, made no estimate of the speed. The jury could draw some inferences as to speed from the physical facts. The car stopped abruptly close to the place of impact. The fire chief said "the car bumped him and stopped right there." The plaintiff was thrown to a sitting position on the pavement some ten to twenty feet to the front of the car with the bags of groceries and potatoes intact in his arms or at his side with a few potatoes spilled. He had no broken bones but had contusions and abrasions on the right side. However, because the injuries aggravated a pre-existing diseased condition he suffered a heart attack a few days after the accident followed by a blocking of an artery of the leg requiring amputation.

The defendant was driving in his right lane of traffic on a street where he had the right-of-way over a pedestrian. But as was the plaintiff he was charged with knowledge of the conditions increasing the hazards such as the relatively heavy traffic and the impaired efficiency of his headlights at dusk. He was driving an automobile under conditions which required his careful attention and constant lookout to insure the safety of other users of the highway. The risk of injury to others from even momentary inattention of the driver of a motor vehicle is considerable.

It is the duty of any person operating a motor vehicle upon a public highway of this state to keep such lookout for

other users of the highway as a reasonably prudent person would maintain under the same or similar circumstances, and to have the motor vehicle driven by him under such control that he can stop the same, or otherwise avoid an accident, within his range of vision, unless by reason of a condition or circumstances which could not have been reasonably anticipated by an ordinarily prudent person in like position, he could not stop or otherwise avoid an accident. King v. Farmers Educational and Cooperative Oil Co., 72 S.D. 280, 33 N.W.2d 333; Winburn v. Vander Vorst, 74 S.D. 531, 55 N.W.2d 609, Id., 75 S.D. 111, 59 N.W.2d 819.

The jury could infer from the evidence that the defendant drove upwards of a hundred feet while the plaintiff walked a few steps into the path of the car. The two eyewitnesses could see the car hit the plaintiff, one from in front of the store and the other from near the south end of the crosswalk. The evidence shows that the defendant did not maintain a proper lookout.

The negligence of the defendant particularly as to lookout was a substantial factor in causing the accident. Likewise, the contributory negligence of the plaintiff in crossing the avenue under the existing conditions and in failing to maintain the constant lookout required of a pedestrian in such position and to grant the right-of-way to defendant was a substantial factor in causing injury to himself. The high standard of care as to lookout required by a driver of a motor vehicle to insure the safety of other users of the highway in order to conform to the standard of ordinary care, is much the same as the increased care a pedestrian must exercise by constant lookout for his own safety when walking across a traffic lane where vehicular traffic has the right-of-way.

With the norm of the reasonable man as a standard, reasonable minds must conclude that the accident was proximately caused by the conduct of both parties which fell below the standard of reasonable prudence and care. In each instance the departure from the standard of care of the reasonable man is of much the same kind and quantity, that is, the quantum of want of ordinary care exercised by the plaintiff for his own protection, if not equal to or nearly equal to, approaches close enough

to the quantum of want of ordinary care exercised by the defendant for protection of others as to take it out of the range of the word "slight" in comparing it to the negligence of the defendant, within the accepted meaning of the word as used in the comparative negligence statute.

The evidence in this case with all reasonable inferences that can be drawn therefrom viewed most favorably to the plaintiff show beyond reasonable dispute that the contributory negligence of the plaintiff was a substantial factor in causing his injury and more than slight in comparison with the negligence of the defendant. The contributory negligence of the plaintiff was not small in amount or of little importance or insignificant or unsubstantial or inconsiderable, that is to say, it was not slight in comparison with the negligence of the defendant. Upon such record the standards of conduct in applying the comparative negligence law were for the court to determine and not for the jury. Flanagan v. Slattery, 74 S.D. 92, 49 N.W.2d 27.

The judgment is reversed and the cause remanded with directions to dismiss the complaint.

RENTTO and HANSON, JJ., concur.

HOMEYER, P. J., and BIEGELMEIER, J., dissent.

BURNS, Circuit Judge, sitting for ROBERTS, J., disqualified.

HOMEYER, Presiding Judge (dissenting).

I respectfully dissent. The record is somewhat incomplete on measurements and distances, but it does show that there are two lanes of travel on First Avenue where plaintiff was injured when crossing; one lane for traffic moving eastward and one lane for traffic moving westward. Plaintiff's testimony is that he looked to the west before entering the south lane, and again "about to the middle" before he entered the north lane, he looked to the east and saw the defendant's car lights at about the alley and figured he could make it across. The accident occurred slightly east of the east crosswalk at the intersection of Rowley Street and First Avenue so it may be concluded that the distance from the alley to the place where plaintiff observed defendant's

car and attempted to cross was about 125 feet. In my opinion this evidence presented a jury question on contributory negligence under the rule of Bock v. Sellers, 66 S.D. 450, 285 N.W. 437, which was decided before enactment of the comparative negligence law.

Language used in Cowan v. Dean, 81 S.D. 486, 137 N.W.2d 337, should not be construed otherwise, and in fact is in affirmation of a basic rule of negligence law which has been recognized by this court repeatedly. In Cowan we said: "Where he (a pedestrian) looks and does not see an approaching automobile, or sees it and misjudges its speed or distance from him, or for some other reason concludes that he can cross safely and avoid injury to himself, a jury question is usually presented." The evidence in that case allowed no logical inference that the plaintiff looked and misjudged either the distance or the speed of the vehicle which struck him. The only reasonable inference was that he did not look or did not look effectively. The car which he testified that he saw 4 1/2 blocks away, which would be 1,350 feet or about a 1/4 mile distant when he started running across the street, could not possibly have been the vehicle which struck him, and we said "respondent's car must have been in close proximity when he started across the street—the evidence allows no other conclusion—and we see no reasonable excuse for his failure to see the car which struck him."

While the court said in Cowan that "one who crosses a street between intersections is required to keep a constant lookout", I do not interpret this to mean that after he once looks and enters the lane in which he is injured, he must continue to look and observe the vehicle he has seen after he had concluded it would not strike him; that a failure so to do makes him contributorily negligent as a matter of law. Rather, while I concede it was the duty of plaintiff to be continuously alert and to look for traffic, which the evidence shows he did before entering the north lane, it was for the jury to determine if his conduct when he concluded he could safely cross was that of an ordinary reasonable man. Giving the plaintiff the benefit of the inferences to which he is entitled, the jury could find the plaintiff was not negligent. See Pfisterer v. Key, 218 Ind. 521, 33 N.E.2d 330.

The opinion does not rely upon violation of the city ordinance prohibiting crossing the street except at a right angle and at a regular crosswalk at the end of a block in the business section as establishing negligence per se. I concur in this position. SDC 1960 Supp. 44.0318, which is a yield right-of-way statute, similar to the Mitchell right-of-way ordinance, provides:

"Local authorities in their respective jurisdictions may by ordinance require that at intersections where traffic is controlled by traffic control signals or by police officers, pedestrians shall not cross a roadway against a read or 'Stop' signal, and between adjacent intersections so controlled shall not cross at any place except in a marked or unmarked crosswalk."

The record is clear that the intersection west of where plaintiff was injured, that is, at First Avenue and Rowley Street, was not controlled by traffic control signals or by police officers. The ordinance could not supersede the statute and when it attempted to prohibit crossing where the accident occurred, it was beyond the power delegated to the city. In Wilton v. Henkin, 52 Cal. App.2d 368, 126 P.2d 425, it was held that an ordinance which conflicted with state law in the regulation of pedestrian crossing of streets was void. See also Annot. 147 A.L.R. 522, 560, 561.

In my opinion, liability under the verdict can and should be sustained without reliance upon the comparative negligence statute.

BIEGELMEIER, Judge (dissenting).

While the majority opinion leads to the result of dismissal of the action on the facts here, it could well serve as an opinion where a pedestrian was crossing the street in the middle of the block or suddenly stepped out from behind parked cars or ran across the street, all without looking. These are not the facts before us. The evidence indicates, and the opinion recognizes, that this was a business street in mid-town Mitchell with mercantile establishments and parked cars nearby, so busy that a stop and go light was at the east end of the block where the accident occurred. Plaintiff did violate the ordinance in not

crossing the street at right angles at the end of the block. It does not appear there was a "regular" or distinguishable crosswalk.

The ordinance also provides a pedestrian crossing a street at any point other than the marked crosswalk (there was none) or this so-called unmarked crosswalk at the end of the block shall yield the right-of-way to vehicles upon the roadway. From the evidence the jury could find, and we must assume it did find, plaintiff looked to the east and defendant's car appeared to be about at the alley a half block away. He concluded he could make it across, but was struck before doing so. The evidence is uncertain and varies somewhat where he was hit. One witness indicated plaintiff was sitting in line with the north-south sidewalk, and was hit 10 to 12 feet east thereof; another placed him on the "west side of the sidewalk, in a line with that". That spot is therefore uncertain, though it must be he was close to the end of the block, not farther than 10 or 12 feet at the most in one version and closer in another. As the opinion states he was "nearing the crosswalk" and further that the record is devoid of measurements and estimates of many of the distances involved. Defendant on the other hand drove upwards of 100 feet while plaintiff was crossing the street in his full view, yet he continued to drive ahead at an unlawful speed until he was, by his own admission, 8 or 10 feet from plaintiff and could not or did not stop in time to avert the accident.

In Cowan v. Dean, 81 S.D. 486, 137 N.W.2d 337, the pedestrian was running across the street in the middle of the block and either did not look or failed to see defendant's car in plain sight, the court wrote:

"Where he * * * sees it and misjudges its speed or distance from him, or for some other reason concludes that he can cross safely and avoid injury to himself, a jury question is usually presented."

The latter is the situation here and I am not inclined to extend Cowan to a pedestrian adjacent to or, as the opinion concludes, "nearing the crosswalk". While a technical violation of the ordinance to cross as he did, it was not such departure from the

conduct of a reasonable or ordinarily prudent person for the court to direct a verdict for defendant, and was a question more properly to be submitted to a jury to determine if plaintiff's negligence was slight compared to defendant's negligence. If plaintiff had been on the crosswalk at the end of the block he would have been free from all negligence. He was at such a place near the end of the block that defendant was bound to observe and drive with due care as to persons crossing at or near it and was not surprised or unaware of the possible presence of persons in the middle of the block.

The legislative power of Mitchell in the ordinance providing that a pedestrian crossing a street at a point other than within a marked crosswalk or unmarked crosswalk yield the right-of-way to vehicles, stated that provision "shall not relieve the driver of any vehicle from the duty to exercise due care for the safety of pedestrians". The court strikes that legislative act from the Mitchell ordinances as it now concludes such driver need not exercise due care but may drive negligently and carelessly run down such a pedestrian without liability. It appears the court is returning to decisions declaring plaintiff negligent as a matter of law as expounded in opinions such as Culhane v. Waterhouse, 1927, 51 S.D. 584, 215 N.W. 885. There plaintiff, a farm wife, and her husband were standing off the roadway in a ditch visiting with the driver of an automobile parked on their side of the road. They noticed an oncoming automobile weaving from side to side, driven by a drunken driver and as it neared them it turned into the ditch hitting plaintiff. This court overturned a jury verdict for plaintiff and concluded she was negligent as a matter of law. It was such opinions that gave rise to the passage of the comparative negligence law. SDC 1960 Supp. 47.0304-1. Without that statute the **Culhane** and similar decisions were not then defensible and since its passage and recent amendments the majority opinion is not in accord with its intent or verbiage and invades the province of the jury.

As the court's opinion dismisses the action and does not reach the claim that damages allowed may be excessive, there is no reason to discuss that question.