Antoine Hubert **PROVANCIAL**,
Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 72–1221.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1972.

Decided July 21, 1972.

John J. Simpson, Winner, S. D., for appellant.

William F. Clayton, U. S. Atty., R. D. Hurd, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and URBOM,* Chief District Judge.

URBOM, Chief District Judge.

Appeal has been taken following a judgment for the defendant on the merits of a claim for personal injuries against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2675(a). The complaint sought damages for alleged negligence of police officers in failing to provide medical treatment to the plaintiff's eyes following the arrest of the plaintiff, Antoine Hubert Provancial. In an earlier appeal this court held that the two arresting officers, Charles Herman and Elmer Bear Heels, members of the City of Mission Police Department, were employees of the federal government at the time of the alleged negligent acts. Provancial v. United States, 454 F.2d 72 (8th Cir. 1972).

**I**

Judgment for the United States was entered on the merits by the district judge, sitting without a jury, on the strength of his findings of fact contained in an unpublished memorandum that:

". . . [T]here is no causal connection between the acts of the police officer and the resulting loss of sight by the plaintiff. Plaintiff had a very serious eye infection on July 12. He was treated on the 12th for the infection and he received medication to halt the spread of the infection. He refused or failed to use the medication. When he was subsequently arrested on July 16 he was still having difficulty with his eye from the previous infection. The police officers kept the plaintiff for approximately 18 hours before he was taken to a hospital. At the hospital he was treated for five days. Upon his release the treating physician testified that the prognosis was for 100 percent recovery. Plaintiff was given some additional medication to control the infection. The plaintiff discontinued the use of the medication and subsequently lost the sight in his right eye.

"There is conflicting testimony as to whether plaintiff's blindness was caused by acid splashing in his eye or the result of extended conjunctivitis. The weight of the medical testimony is that the blindness was the result of conjunctivitis and not the result of the splashing of acid in his eye, if in fact any acid was splashed in the plaintiff's eye.

". . . Therefore, the court finds that the deprivation of medical attention for 18 hours was not a proximate or immediate cause of the blindness.

". . . [I]f the actions of the police officers were in any way a breach of their duty to the plaintiff, the negligence of the officers was slight in comparison to the overwhelming gross negligence of the plaintiff. . . ."

The finding that the acts of the officers were not a proximate cause of the plaintiff's loss of sight is amply supported by the record. Dr. Lee Shershow, the treating physician, testified in response to a question calling for his opinion as to the cause of the loss of sight in the eye:

"It would be my feeling that the cause was the infection which started on the

---

* Of the District of Nebraska, sitting by designation.

12th of July [four days before the arrest] which improved in the hospital, but then reoccurred. When the patient did not follow his recommended medical treatment, the infection spread and involved the whole eye. Whether or not the infection which was definitely present prior to the alleged acid getting into the eye was worsened by the presence of the acid, I think is immaterial because the patient did improve with treatment after the alleged acid.

\*   \*   \*   \*   \*   \*

"I think all subsequent injury of the eye could have been averted by continuing the eye drops and continuing his clinic appointments. I think the patient had a 100 per cent curable disease.

\*   \*   \*   \*   \*   \*

"In my opinion, the entire damage to the eye could have been prevented by continued treatment."

■ The trial judge, as finder of the facts, was entitled to accept that testimony as having greater weight than evidence to the contrary.

The references to acid arise primarily from the plaintiff's testimony that a few minutes before the arrest he was attempting to repair his car by striking the battery and that, as a result of the striking, battery acid splashed into his eye. No explicit finding was made by the trial court as to whether acid in fact entered the eye. In view of the evidence, the trial court was justified in finding that the blindness was not caused by any delay in getting medical treatment after the arrest on July 16, 1969, irrespective of the presence or absence of acid immediately before the arrest.

■ Quite aside from the claim for damages for loss of sight, the plaintiff sought recovery for physical and mental pain and suffering from the officers' failure to obtain medical assistance. Such a claim was affirmatively pleaded and evidence of pain and suffering was adduced. No findings of fact were made by the trial court on that portion of the claim. Inconsistency would not necessarily result from a finding that pain and suffering were a proximate result of acts or omissions of the arresting police officers for some of or all the period of 18 hours between arrest and hospitalization of the plaintiff, even though the blindness was not the result of the officers' acts or omissions. We therefore remand for determination by the trial court the issues relating to the claim for mental and physical pain and suffering.

■ Failure of the trial court to make findings on those issues was raised by the plaintiff's motion for a new trial or to amend findings and judgment. Although the notice of appeal did not state that the appeal was being taken from the denial of the motion, review here of both the judgment and the denial of the motion is proper. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■ Although on appeal the plaintiff appears to take the position that the acts or omissions of the police officer were negligence as a matter of law, we do not so hold. It is for the trial court to evaluate the evidence, because reasonable persons could differ in their factual conclusions.

## II

■ The appellant further contends that the trial court erroneously applied the doctrine of contributory negligence and comparative negligence, when it should have used at most the doctrine of avoidable consequences. Cited are 22 Am.Jur.2d, Damages, §§ 30, 31; McCormick on Damages, 127 et seq.; and Southport Transit Company v. Avondale Marine Ways, 234 F.2d 947 (5th Cir. 1956). The appellant acknowledges that the principle of avoidable consequences is not a defense but merely a rule of damages by which some items of loss may be excluded from consideration. In the setting of this case, therefore, the doctrine can have no applicability to the claim for the plaintiff's blindness, because the trial court justifiably has

found that there was no causal connection between the acts or omissions of the officers and the loss of sight of the plaintiff. Whatever viability the doctrine of avoidable consequences has under South Dakota Law [1], we have no hesitancy in concluding that in the absence of such causal connection the defendant cannot be liable for the blindness. Where no liability attaches, doctrines of damages have no materiality [2].

We do not decide whether the principle of avoidable consequences or related concepts are to be applied to the claim for pain and suffering. The trial court should be given an opportunity to pass upon that claim in all its aspects.

### III

Finally, the appellant argues that, if he was guilty of contributory negligence, his negligence was slight in comparison with the negligence of the defendant within the meaning of the comparative negligence statute, South Dakota Compiled Laws, 20-9-2 (1967). He urges that in comparing the negligence of the defendant with the contributory negligence of the plaintiff, the trial court should have considered the attitude with which the Indians view the services of the hospital to which the plaintiff was taken after his arrest.

The most obvious answer is that the trial court used comparative negligence as an alternative finding which in no way diminished the finding that there was no causal connection between the negligence, if any, of the police officers and the blindness. Unless the negligence of *each* party was a contributing cause of the injury, there is no need to compare the negligence of one with the

contributory negligence of the other [3]. Any miscomprehension of the comparative negligence concept, therefore, would be harmless error as to the blindness claim.

Again, the trial court did not deal with the claim for pain and suffering. Whether comparative negligence is applicable to that claim should be left in the first instance to that court.

The case is remanded for a determination of the issues relating to physical and mental pain and suffering. In all other respects the judgment is affirmed.

Affirmed.

---

1. No cases have been cited by either party nor have we found any in which avoidable consequences is discussed by the Supreme Court of South Dakota.

2. See Southport Transit Company v. Avondale Marine Ways, 234 F.2d 947 (5th Cir. 1956), for a full discussion of avoidabe consequences.

3. In Nugent v. Quam, 82 S.D. 583, 152 N.W.2d 371, 377 (S.D.1967), it is said,

"Obviously, unless both plaintiff and defendant are chargeable with negligence there can be no application of the comparative negligence law; there must be a quantum of want of ordinary care by each to compare one with the other." It follows that unless the want of ordinary care by each is a contributing cause of the injury, there is no purpose of making a comparison.