#28664-a-GAS
**2019 S.D. 29**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SHIRLEY TAMMEN,                          Plaintiff and Appellant,

   v.

K & K MANAGEMENT SERVICES, INC./
FRYN' PAN,                               Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RODNEY J. STEELE
Retired Judge

* * * *

N. DEAN NASSER, JR. of
Nasser Law Offices, P.C.
Sioux Falls, South Dakota                Attorneys for plaintiff
                                         and appellant.


ERIC C. SCHULTE
MICHAEL L. SNYDER of
Davenport Evans Hurwitz
   & Smith, LLP
Sioux Falls, South Dakota                Attorneys for defendant
                                         and appellee.

* * * *

ARGUED ON
MARCH 26, 2019
OPINION FILED **05/22/19**

SEVERSON, Retired Justice

[¶1.] In this slip-and-fall case, the jury returned a verdict finding the business establishment not negligent. Plaintiff appeals, asserting multiple errors related to the jury instructions. We affirm.

## Background

[¶2.] On January 31, 2014, Shirley Tammen and her husband, Ernest, arrived at the Fryn' Pan Restaurant (Restaurant) in Sioux Falls, South Dakota to eat lunch. After Ernest parked the couple's vehicle, the two walked across the parking lot toward the Restaurant's sidewalk. They later explained that they had noticed the parking lot and sidewalk were mostly free of snow and ice. The two took the most direct path to the Restaurant by walking across the parking lot and between two parked cars. In doing so, Ernest walked ahead of Shirley. Ernest turned back just as Shirley slipped and fell on ice. Shirley claimed she did not observe the ice before she slipped.

[¶3.] Because Shirley did not initially believe she was seriously injured from the fall, she and Ernest ate lunch at the Restaurant. During their meal, however, Shirley began to have trouble moving her wrist and experienced increased pain. They reported the fall to the Restaurant, explaining to the manager that Shirley had slipped on ice between two vehicles parked in the parking lot. The manager created an incident report and later testified that he examined the area in which Shirley fell.

[¶4.] Shirley sought medical care for her wrist and eventually underwent surgery. In October 2014, she brought suit against the Restaurant for negligence,

alleging the Restaurant failed to take reasonable measures to keep the parking lot safe by removing snow and ice. The Restaurant disputed it was negligent and alternatively argued Shirley had assumed the risk and was contributorily negligent.

[¶5.] During a three-day jury trial, the Restaurant presented evidence of its efforts to keep its parking lot and walking areas free of snow and ice. Stan Mitzel, a former general manager, and Adam Lee, the Restaurant's current general manager, testified that Restaurant employees remove snow and ice from the public sidewalk near the Restaurant and from the sidewalk surrounding the Restaurant. They further testified that the Restaurant contracts with First Rate Excavate to remove snow and ice from the parking lot. Robert VanBeek of First Rate Excavate testified that First Rate had been removing snow and ice from the Restaurant's parking lot for approximately fifteen years.

[¶6.] According to the weather report for January 30, 2014 (the day before Shirley fell), it had snowed .91 inches and the temperature reached approximately thirty-six degrees above zero. Because of the snow fall, the Restaurant called First Rate during the evening of January 30 to remove snow and ice from the parking lot. No snow fell on the day of the incident, January 31, and the temperature reached twenty degrees above zero.

[¶7.] VanBeek testified that First Rate uses a two-step process to remove snow and ice. First, it uses a plow to clear snow from the parking lot. Second, it applies a chemical sand to melt and keep ice from forming. VanBeek acknowledged that because the Restaurant is open twenty-four hours a day, parked cars make it difficult if not impossible for First Rate to apply sand between the vehicles. He

testified that First Rate employees do not exit the sander to apply chemical sand under or between parked cars. According to VanBeek, First Rate's record reflected it spent an hour-and-a-half removing snow and ice from the parking lot on January 30. The record further reflected that it had plowed the snow in the Restaurant's parking lot and made three passes applying sand. The Restaurant did not call First Rate to return on January 31.

[¶8.] Lee testified that when he arrived for work on the morning of January 31, he spent "a couple of minutes . . . up to five minutes" inspecting the parking lot. He claimed he observed that the sidewalks were clear and the parking lot appeared to be in good condition. He acknowledged, however, that his inspection did not specifically include walking the area in which Shirley fell. He further admitted that he personally did not shovel or salt the areas between the parked cars and also did not instruct his employees to do so.

[¶9.] Mitzel testified as the Restaurant's representative; he is a partial owner. Mitzel could not recall if he was at the Restaurant the day Shirley fell. Therefore, he did not opine on the condition of the parking lot. He, however, explained (similar to Lee's testimony) that the Restaurant is ultimately responsible for snow removal in its parking lot and sidewalks, regardless of its contract with First Rate. Mitzel also testified about the Restaurant's drainage conduit in the parking lot. The conduit was installed in 1990 and was intended to channel water, including water from melting snow and ice, away from the parking lot and into the sewer drain. Mitzel could not recall the Restaurant having issues with pooling

water in its parking lot. He, however, admitted that the area in which Shirley fell would have been in the shade.

[¶10.] After the close of evidence, both parties moved for a judgment as a matter of law. After the court denied both motions, Shirley asked the court to strike the Restaurant's defenses of assumption of the risk and contributory negligence. The court struck assumption of risk as a defense but determined the Restaurant had presented sufficient evidence to submit the issue of contributory negligence to the jury. The parties then settled jury instructions. Shirley objected to a number of instructions related to negligence, nondelegable duties, contributory negligence, and dormant pre-existing health conditions. The court overruled her objections and denied her requested instructions on premises liability and on dormant pre-existing health conditions.

[¶11.] The jury entered a verdict finding the Restaurant not negligent. Because it did not find the Restaurant negligent, the jury did not reach the issue of Shirley's contributory negligence. Shirley appeals, asserting the circuit court failed to give full and complete instructions to the jury and erred in rejecting her requested instructions. She further asserts the circuit court erred when it instructed the jury on the Restaurant's defense of contributory negligence and when it refused to instruct on dormant pre-existing health conditions.

**Analysis**

[¶12.] Shirley argues the circuit court's instructions failed to provide "the jury with a complete statement of the law on the liability issues relevant to premises liability of [the Restaurant] to its business invitee[.]" She acknowledges

the circuit court's instructions were accurate. But she contends the court's instructions were largely based on the pattern jury instructions and, thus, did not sufficiently address the specific duties a possessor of land owes in relation to the specific rights of a business invitee. She further contends that her requested instructions more adequately set forth the applicable law, and the court erred in refusing them.

[¶13.]     Although a circuit court has discretion in the wording and arrangement of its jury instructions, "[n]o court has discretion to give incorrect, misleading, conflicting, or confusing instructions." *Carlson v. Construction Company*, 2009 S.D. 6, ¶ 17, 761 N.W.2d 595, 600. Further, "[a] court's failure to give a requested instruction that properly sets forth the law constitutes error." *Id.* ¶ 13. However, a court commits no error when it refuses "to amplify instructions which substantially cover the principle embodied in the requested instruction." *State v. Kryger*, 2018 S.D. 13, ¶ 41, 907 N.W.2d 800, 814 (quoting *State v. Klaudt*, 2009 S.D. 71, ¶ 20, 772 N.W.2d 117, 123). To determine whether the court erred in instructing the jury, we apply a de novo standard of review and "construe jury instructions as a whole to learn if they provided a full and correct statement of the law." *Vetter v. Cam Wal. Elec. Coop., Inc.*, 2006 S.D. 21, ¶ 10, 711 N.W.2d 612, 615 (quoting *First Premier Bank v. Kolcraft Enterp., Inc.*, 2004 S.D. 92, ¶ 40, 686 N.W.2d 430, 448).

[¶14.]     As to the definition of negligence, the court instructed the jury as follows:

## Instruction 11

> Negligence is the failure to use reasonable care. It is the doing of something which a reasonable person would not do, or the failure to do something which a reasonable person would do, under facts similar to those shown by the evidence. The law does not say how a reasonable person would act under facts similar to those shown by the evidence. That is for you to decide.

Shirley objected to this instruction and requested the following instruction:

> Negligence is the failure to use reasonable care. It is the doing of something which a reasonable person would not do, or the failure to do something which a reasonable person would do, under facts similar to those shown by the evidence. It is conduct which breaches a duty imposed by the law.

According to Shirley, the court's instruction "incorrectly allowed the jury unbridled discretion, unguided in any respect," in deciding how a reasonable person would act under the facts. We disagree.

[¶15.] The circuit court's instruction is an accurate statement of the law. In *Carlson*, we identified that the reasonable person standard under our law is determined by the evidence and decided by the jury. 2009 S.D. 6, ¶ 13, 761 N.W.2d at 599. Therefore, contrary to Shirley's view, the court properly informed the jury to determine how a reasonable person would act under the circumstances, and the court did not err in giving Instruction 11 or when it refused Shirley's requested instruction.

[¶16.] Shirley also objected to the following instructions:

## Instruction 11A

> A person who is exercising reasonable care has a right to assume that others will perform their duty and obey the law. Unless there is reasonable cause of thinking otherwise, people can

assume that they are not exposed to danger from another's violation of their duty of care.

Instruction 12

The term "reasonable person" refers to a person exercising those qualities of attention, knowledge, intelligence, and judgment that society requires of its members for the protection of their own interests and the interests of others.

She requested the following to be used instead:

The term "reasonable person" refers to a fictitious, ideal, reasonable, prudent person exercising those qualities of attention, knowledge, intelligence, and judgment that society requires of its members for the protection of their own interests and the interests of others. The actor whose conduct is being considered is required to do what this ideal individual would do in the same or similar circumstances as those shown by the evidence. The reasonable person is never negligent, and his, her, or its conduct is always up to standard.

The term "reasonable person" means that degree of care which a reasonable person would use in order to avoid injury to themselves or to others under circumstances similar to those shown by the evidence.

Shirley argues her instructions were necessary because the circuit court's instructions failed to inform the jury of the qualities of a reasonable person and failed to set forth an "external and objective" reasonable person standard. She further claims her instruction is a correct statement of the law. In her view, this Court adopted the Restatement (Second) of Torts § 283's definition of a reasonable person in *Nugent v. Quam*, 82 S.D. 583, 595, 152 N.W.2d 371, 377–78 (1967).

[¶17.] The court did not err in refusing Shirley's requested instruction. First, the court's instructions properly informed the jury of the qualities of a reasonable person. *See, e.g., Westover v. East River Elec. Coop., Inc.*, 488 N.W.2d 892, 897 n.11 (S.D. 1992) (explaining what the phrase "reasonable person" denotes). Second,

while this Court quoted the Restatement (Second) of Torts § 283 in *Nugent*, we did so in explanation of the standard of care relevant to determining a plaintiff's alleged negligence compared to a defendant's alleged negligence. *See* 82 S.D. at 595, 152 N.W.2d at 377–78. We did not adopt the comments to the Restatement to be the definition of a "reasonable person."

[¶18.]     Nevertheless, a review of the Restatement (Second) of Torts § 283, upon which Shirley relies, supports the circuit court's decision to refuse her instruction. The Restatement describes the qualities of a reasonable person to "denote a person exercising those qualities of attention, knowledge, intelligence, and judgment which society requires of its members for the protection of their own interests and the interest of others." Restatement (Second) of Torts § 283 cmt. b. It then expands on that definition to describe what conduct those qualities are intended to encapsulate.

[¶19.]     Similarly, the circuit court's instruction identified the qualities of a reasonable person. Shirley's requested instruction then amplifies the circuit court's instruction. Because the court was not required to amplify its instruction to provide additional verbiage already embodied in its instructions, the court did not err when it refused Shirley's requested instruction. *See Kryger*, 2018 S.D. 13, ¶ 41, 907 N.W.2d 800, 814.

[¶20.]     Next, Shirley objected to Instruction 14.

> The possessor of land owes an invitee the duty of exercising reasonable or ordinary care for the invitee's safety.

In its place, Shirley requested the following instructions:

## Requested Instruction 18

As a business invitee, Shirley Tammen is entitled to expect that the Restaurant will have taken reasonable care to ascertain the actual condition of the premises and, having discovered its actual condition, will either have made it reasonably safe by repair or will have given her a warning of the risks involved. Therefore, a customer is not required to discover dangers which, were she not a customer, she might otherwise be expected to discover. A customer is entitled to expect the Restaurant to have made far greater preparations for the customer's safety than a household possessor of land would make for his or her invitee.

## Requested Instruction 19

A possessor of land who operates a business on the land has superior knowledge of the condition of the land to that of the customer it invites to come on the land for its business purposes and the business thereof, is often in the best position to avoid harm to its customers.

The Fry'n Pan, as such a business owes its customers, including Shirley Tammen, the duty of exercising reasonable care to keep the premises reasonably safe during the Restaurant's active operations on the property. The duty is an affirmative duty of the business to protect its invitees not only against dangers actually known to the business but also against those dangers which, with a reasonable care, the business might discover.

When circumstances indicate foreseeable unreasonable risk of harm to its customers the Restaurant must investigate, inspect, and discover such risk of harm and then must exercise reasonable care to remedy the risk of harm or to warn the customer of it in order to make the property reasonably safe.

The failure to exercise such reasonable care is negligence.

## Requested Instruction 22

A business invitee enters onto a business premises upon an implied representation or assurance by the business that the business has prepared the land and made it ready and safe to receive the invitee. As a business invitee, Shirley Tammen was entitled to expect that the Restaurant had taken reasonable care to ascertain the actual condition of the premises and, having discovered its actual condition, had either made it reasonably

> safe by repair or would have given her a warning of the risks involved. A customer is not required to discover dangers which, were she not a [sic] the business's customer, she might otherwise be expected to discover. A business customer is entitled to expect the business to have made far greater preparations for its customer's safety than a household possessor of land would make for his or her invitee. The Customer is therefore entitled to expect that the business will have exercised reasonable care to have made the land safe for the [sic] her entry and use for the purpose of the invitation before she enters.

Shirley contends her instructions provide "very important" and "very material" substance not contained in the court's instruction. She further claims that her instructions properly set forth the law as stated in this Court's past cases. *See, e.g., Janis v. Nash Finch Co.*, 2010 S.D. 27, 780 N.W.2d 497; *Mitchell v. Ankeny*, 396 N.W.2d 312 (S.D. 1986). Finally, she claims that without her instructions, the jury was not informed that the Restaurant owed her more care than a homeowner would owe to a guest.

[¶21.] Although Shirley relies on *Janis* and *Mitchell* as support for her requested instructions 18, 19, and 22, the legal principles espoused in those cases aided the Court in discerning whether a duty existed, not whether a jury was properly instructed. *Janis*, 2010 S.D. 27, ¶ 15, 780 N.W.2d at 502–03 (A grocery store owed a duty to its customer based on the foreseeability of injury.); *Mitchell*, 396 N.W.2d at 313 (Summary judgment was improperly granted against plaintiff's claim that the landowner failed to keep the premises reasonably safe and failed to warn of a concealed danger.) More importantly, as we identified in both *Janis* and *Mitchell*, the duty owed to an invitee is "the duty of exercising reasonable or ordinary care for the benefit of the invitee's safety[.]" *Janis*, 2010 S.D. 27, ¶ 10, 780 N.W.2d at 502 (quoting *Mitchell*, 396 N.W.2d at 312). We did not distinguish

between an invitee to a business or to other property. Here, the circuit court properly instructed the jury on the duty owed by the Restaurant to Shirley.

[¶22.]     During oral argument, however, Shirley emphasized that although the court's instruction was a correct statement of the law, the court failed to instruct the jury on the sub-duties owed to an invitee, namely the duty to inspect and the duty to warn. In her view, the circuit court erred when it refused her requested instructions on the Restaurant's duty. While an instruction on the sub-duties owed to an invitee might have been warranted, Shirley's requested instructions go beyond identifying that the Restaurant owed Shirley a duty to inspect and a duty to warn. For example, Shirley's requested instructions 18 and 22 refer to a household possessor's duty, but this case does not concern a duty imposed on a household possessor of land. Similarly problematic, Shirley's instructions suggest she had no duty to exercise reasonable care for her own safety. Yet "a landowner is not an insurer as to the safe condition of the premises." *Janis*, 2010 S.D. 27, ¶ 23, 780 N.W.2d at 504. Indeed, "[i]n some instances, the burden to avoid harm is on the invitee[.]" *Id.* ¶ 13 n.1.

[¶23.]     In *Carlson*, we held that a circuit court is not required "to modify or rewrite a party's substantively incorrect requested instruction in a civil case." 2009 S.D. 6, ¶ 16, 761 N.W.2d at 600. Therefore, although the facts of the case might have supported instructions on the subparts of the duty to keep property reasonably safe, *see Mitchell*, 396 N.W.2d at 312, the circuit court was not required to modify Shirley's requested instructions to conform to the law and facts or to

remove the potentially misleading and confusing statements. *Carlson*, 2009 S.D. 6, ¶ 16, 761 N.W.2d at 600.

[¶24.] Last, Shirley requested the following instruction, which the court refused.

> A business which hires an independent contractor to exercise the reasonable care the business would be required to exercise does not by hiring such independent contractor delegate or transfer the business' obligations to its invitees to maintain a safe premises as described herein. The business' duty to its invitees remains with the business and is nondelegable.

She claims her instruction was necessary because a jury "cannot be expected to know which duties the law imputes to others and which it does not[.]" She argues that the circuit court's instruction permitted the jury to conclude the Restaurant was not negligent because it was "reasonable" to hire First Rate to remove snow and ice from the parking lot.

[¶25.] From our review, the circuit court did not err when it rejected Shirley's requested instruction. This case did not involve an attempt by the Restaurant to delegate its responsibility to First Rate to keep the premises reasonably safe. Indeed, at no point did the Restaurant assert that it was not negligent because First Rate was negligent or that it was not negligent because First Rate acted reasonably. Moreover Lee, on behalf of the Restaurant, testified that it is the Restaurant's responsibility to remove snow and ice between parked vehicles in the parking lot, not First Rate's.

[¶26.] From our review of the court's instructions as a whole, the court provided the jury a full and accurate statement of the applicable law and legal principles. We further conclude the circuit court did not err when it refused

Shirley's proposed instructions. Therefore, and because the jury found the Restaurant not negligent, we need not address Shirley's remaining issues related to the defense of contributory negligence and her request for an instruction on dormant pre-existing health conditions. The jury did not reach the question of Shirley's contributory negligence, if any, or the question of damages.

[¶27.]    We affirm.

[¶28.]    GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, concur.

[¶29.]    SALTER, Justice, deeming himself disqualified, did not participate.