## WILLIAMS V. WILLIAMS.

1.  When an appeal is taken from a judgment and an order denying a new trial, and also from another appealable order, this court will presume the appeal was intended to be taken from the judgment and order denying the new trial, and treat the appeal from the independent order as surplusage. The case of Hackett v. Gunderson, 47 N. W. 546, 1 S. D. 479, distinguished.

2.  An order for temporary alimony and counsel fees does not involve the merits of the action, or necessarily affect the judgment, and cannot be reviewed as an intermediate order on an appeal from the judgment and order denying a new trial.

3.  A circuit judge holding court in another circuit upon the request of the judge of the same may continue the term, and conclude the trial of causes he has been requested to try or the unfinished business at an adjourned term of said court.

4.  Where a divorce is granted to the wife, the court may, in its discretion, under the provisions of section 2584, Comp. Laws, make a suitable al-

lowance to be paid to her by the husband in a gross sum, instead of monthly or annual payments.

5.  Where, in an action for a divorce, it appears that the real and personal property of the husband does not exceed $56,700 in value, an allowance to the wife, without children, for her support and maintenance, of the sum of $30,000, to be paid to her in a gross sum, in addition to $3,000 temporay alimony and counsel fees, is, under the circumstances of this case, excessive.

6.  A husband, in an action for a divorce, who neglects or refuses to pay the temporary alimony and counsel fees which he has been ordered to pay to the wife by the court, is not in a position to entitle him to a reversal or modification of the judgment for permanent alimony on an appeal therefrom to this court, so long as such order is unappealed from and operative.

(Syllabus by the Court.   Opinion filed April 26, 1894.)

Appeal from circuit court, Pennington county.   HON. H. G. FULLER, Judge.

Action for a divorce, in which there was a judgment and decree granting defendant a divorce and alimony on her cross complaint.   From the judgment for alimony, plaintiff appeals. Modified.

The facts are stated in the opinion.

*James W. Fowler* and *James Boyd*, for appellant.

When the findings and decisions of the trial court are not warranted by the evidence, they should be reversed upon appeal.   Cowan v. Cowan, 26 N. E. 934; Pierce v. Pierce, 16 S. W. 271; Young v. Young, 15 S. W. 780; Leach v. Leach, 27 Pac. 131; Hedrick v. Hedrick, 26 N. E. 768; Forrest v. Forrest, 25 N. Y. 517; Day v. Day, 50 N. W. 979; Reed v. Reed, 49 N. W. 587; Williams v. Williams, 29 Wis. 517; Burr v. Burr, 7 Hill 207; Blake v. Blake, 75 Wis. 339; Moul v. Moul, 30 Wis. 203; Becker v. Becker, 79 Ill. 532; Campbell v. Campbell, 37 Wis. 207; Bacon v. Bacon, 43 Wis. 197; Hopkins v. Hopkins, 39 Wis. 167; Thomas v. Thomas, 41 Wis. 229; Cralle v. Cralle, 6 S. E. 12; Doolittle v. Doolittle, 43 N. W. 616; Potts v. Potts, 36 N. W. 240; McConahey v. McConahey, 32 N. W. 300; Segelbann v. Segelbann, 39 N. W. 492; Bishop on Mar. &

Div. § 544; Lockbudge v. Lockbudge, 3 Dana 28; Ressot v. Ressot, 82 Ill. 442; Wilson v. Wilson, 102 Ill. 297; Cummings v. Cummings, 50 Mich. 305; Graft v. Graft, 76 Ind. 136; Fumbleson v. Fumbleson, 79 Ind. 558; Galusha v. Galusha, 43 Hun. 181.

Allegations of fraud and wrong are insufficient to raise a presumption thereof. Mills v. Collins, 29 N. W. 109; Hazard v. Guswold, 21 Fed. 178; Lafayette v. Neely, 21 Fed. 738; Burgen v. Porpose, 47 N. J. Eq. 97.

*Charles W. Brown* and *Henry Frawley*, for respondent.

Where the evidence is conflicting this court will not weigh the evidence or go further than to determine therefrom whether or not the respondent has given sufficient legal evidence to sustain the verdict without regard to the evidence given on the part of the appellant, except so far as the same tends to sustain respondent's case. Jeansch v. Lewis, 1. S D. 609; 48 N. W. 129; Falk Brew. Co. v. Mielenz, 5 Dak. 136; Best Brew. Co. v. Pillsbury, 5 Dak. 67; Canfield v. Bogle, 2 Dak. 464.

The amount of alimony is within the sound discretion of the court according to the circumstances of each particular case and will not be modified or set aside unless there is an abuse of such discretion. 2 Bish. Mar. Div. & Sep. sec. 996; Stewart Mar. & Div. sec. 375; Lawrence v. Lawrence, 3 Page, Ch 257; Robinson v. Robinson, 79 Cal. 511; Farley v. Farley, 30 Id. 353; Bergen v. Bergen, 22 Ill, 187; Resson v. Resson, 32 Ill. 442; White v. White, 14 Pac. 293; Fromen v. Fromen, 53 Mich. 383; Rossman v. Rossman, 62 Mich. 429; Lee v. Lee, 28 Pac. 355; Peck v. Peck, 15 N. E 12; Wagner v. Wagner, 49 N. W. 360; Sumner v. Sumner, 12 N. W. 21; Cleghon v. Cleghon, 66 Cal. 409; Pauley v. Pauley, 34 N. W. 514. The word alimony is equally applicable to all allowances whether annual or in gross, made to wife upon a decree of divorce. Burrows v. Purple, 107 Mass. 432; Parsons v. Parsons, 9 N. H. 309; Whittier v. Whittier, 11 Fost. 452; Buckmunster v. Buckmunster, 38 Vt. 248; Sanford v. Sanford, 5 Day 353; Lyon v. Lyon,

21 Conn. 185; Hedick v. Hedick, 28 Ind. 291; Wheeler v. Wheeler, 18 Ill. 39; Jeter v. Jeter, 36 Ala. 391; Campbell v. Campbell, 37 Wis. 206; McClurg v. McClurg 40 Mich. 493; Armstrong v. Armstrong, 35 Ill. 109; Pertrsina v. Thomas, 28 O. St. 596; Hamilton v. Hamilton, 37 Mich. 603; Taylor v. Gladwin, 40 Mich. 232; Blankinship v. Blankinship, 19 Kas. 159; Blake v. Blake, 80 Ill. 523; Golding v. Golding, 74 Mo. 123; Douglas v. Douglas, 47 N. W. 92; Smith v. Smith, 28 N. W. 296; Johnson v. Johnson, 16 N. E. 891. The court has plenary control of its judgments, orders and decrees during the term at which they were rendered, and may amend, correct, modify, or supplement the same for cause appearing; or may to promote justice, revise, substitute, revoke, or vacate them, as may in its discretion seem necessary. 1 Black. Judg. sec. 153; Barrel v. Tilton, 119 N. S. 512; Alabama v. Nichols, 100 N. S. 915; Memphis v. Brown, 94 N. S. 244; Sage v. Central, 93 N. S. 933; DeCosha v. Richardson, 25 Col. 49; Harris v. State, 34 Neb. 303; 40 N. W. 317; Freeman on Judgments, sec. 90; Doss v. Tyack, 14 How. 434; Whitcomb v. Whitcomb, 46 Ia. 437. In cases of justifying circumstances the court may strike out the defendant's answer, or dismiss the plaintiff's complaint, or refuse to proceed with the trial until its alimony order is obeyed. 2 Bish. Mar. & Div. & Sep. sec. 1095; McRea v. McRea, 58 How. Pr. 220; Walker v. Walker, 59 How. Pr. 476; Peel v. Peel, 50 Ia. 521; Allen v. Allen, 72 Ia. 502; Winter v. San Francisco, 70 Cal. 295; Lummerman v. Lummerman, 7 Mont. 114; Farnam v. Farnam, 9 How. Pr. 231; Barker v. Barker, 15 How. Pr. 568; Gaylov v. Macbie, 9. Ia. 212; Waters v. Waters, 49 Mo. 888; Castell v. Castell, 38 Ark. 477; Johnson v. Pinney, 1 Page, ch. 646; Rogers v. Patterson, 4 Page, ch. 454.

CORSON, P. J. This was an action for a divorce, brought by the plaintiff. The defendant answered, and filed a cross complaint praying for a divorce from the plaintiff. A trial was had, resulting in a judgment in favor of the defendant upon her

cross complaint for a divorce from the plaintiff and subsequently a judgment for alimony in favor of the defendant for the sum of $30,000 was rendered, and an order made allowing her $2,200 as temporary alimony and counsel fees.   A motion for a new trial was made and denied.

The trial for divorce was had in March, 1892.   In August, 1892, a trial was had to determine the amount of alimony to be awarded to the said  Eliza  T. Williams, the respondent, resulting in findings and judgment for  the sum  of $30,000 as above stated.   The motion for a new trial was made and determined in August, 1893.   A motion is made in this court to dismiss the appeal in this case upon the grounds stated in the following notice:   "That the said appeal is bad for duplicity in this, to wit:   That in and by said notice of appeal the said appellant appeals to this court from the  judgment rendered herein on the 31st day of August,  1892, in favor of  the respondent and against the appellant for the sum of $30,00 ) alimony and $504.92 costs; and  likewise  appeals from  that certain order  entered herein on the 31st day of  August, 1892, ordering  the plaintiff, William  Williams, within fifteen days from that date to pay to the defendant, Eliza T. Williams, the  sum  of $2,200 as and for her counsel fees and temporary alimony in this action, and from the  whole of said judgment  and  order; and likewise appeals from the order entered herein on the 19th day of August, 1893, denying and overruling plaintiff's motion for a new trial herein and to vacate and set aside said judgment and order of August 31, 1892; and that, although the said appeal is double as aforesaid, but one undertaking on appeal has been served or filed herein."   The  notice  of appeal is as follows:   "Take  notice that the plaintiff, William Williams,  hereby appeals to the supreme court of this state from  the judgment rendered herein on the 31st day of August, 1892, in favor of the defendant for the the sum of  thirty thousand dollars alimony, and $504.92 costs; and  also from  that  certain  order  entered  herein on the 31st day of August, 1892, ordering  the plaintiff, William Williams,

within fifteen days from that date, to pay to the defendant, Eliza T. Williams, the sum of $2,200 as and for her counsel fees and temporary alimony in this action, and from the whole of said judgment and order; and hereby appeals from the order entered herein on the 19th day of August, 1893, denying and overruling plaintiff's motion for a new trial herein, and to vacate and set aside said judgment and order of August 31, 1892.

That an appeal can be taken from the judgment and order overruling the motion for a new trial in the same notice is not questioned, as this court has held that such a notice of appeal is proper. Hawkins v. Hubbard, (S. D.) 51 N. W. 774. But the difficulty in this case arises from including also in the notice of appeal the order for the payment of $2,200 counsel fees and temporary alimony. This order was made as a separate order, and on the same day that the judgment awarding $20,000 was made and entered. Counsel for appellant contend that the reference to the order in the notice of appeal should be treated as surplusage, as the order is one that can be reviewed upon the appeal from the final judgment. Without at this time passing upon the question of whether or not the order can be reviewed as an intermediate order, we are of the opinion that it may properly be treated as surplusage in the notice of appeal, and disregarded. The decision in the case of Hackett v. Gunderson, 1 S. D. 479, 47 N. W. 546, decided by this court, does not rule this case, as the appeal in that case was from two appealable orders. The orders being of the same character, this court held that the appeal was a double appeal, and not an appeal from either order, as the court could not determine from which order the appellant really intended to appeal. But in the case at bar an appeal is taken from the judgment and from the order overruling a motion for a new trial. The evident purpose and intention of the appeal is to obtain a review of the judgment. Where the principal object of taking the appeal is so apparent from the record, we think this court is justified in presuming

that the appeal was intended to be taken from the judgment, and not from the order granting temporary alimony. In an appeal from two orders or two judgments this presumption could not properly be made, as the court could not, by inspection of the record, determine the intention of the party taking the appeal. We are of the opinion, therefore, that in this case the appeal from the order for temporary alimony should be disregarded, and the motion to dismiss the appeal is therefore denied. No injury can result to the respondent from this holding, as the time for taking the appeal from the judgment has not expired, and a dismissal would only result in delay and additional expense in taking a new appeal.

This brings us to the principal question presented by this appeal, namely: Does the evidence justify the finding of the court that appellant was possessed of personal property of the value of not less that $125,000, and that the sum of $30,000 is a just, reasonable, and suitable allowance to be made by the appellant to the respondent for her support during her life, having regard to all the circumstances of the parties respectively? These findings of fact are challenged by the appellant on the ground that the evidence is insufficient to justify them. It becomes necessary, therefore, for this court to review the evidence, and ascertain whether or not there is a preponderance of evidence against the findings of the court. Randall v. Burk Tp. (S. D.) 57 N. W. 4. Unless the evidence does so preponderate in favor of the contention of the appellant the judgment cannot be disturbed. The evidence is exceedingly voluminous, the record covering over 200 closely printed pages and we shall not attempt to do more than to state our conclusions resulting from its examination. There is a marked differance between the claims of the respective parties as to the value of the appellant's property, appellant's counsel contending that the evidence only shows that he had property, at the time of the trial, of the value of $12,500, while the counsel for respondent insists that it was of a greater value than that

found by the court. This difference grows out of the views of counsel as to the amount and value of the property possessed by the appellant. As to the value of appellant's property —independent of 455 shares of stock in Williams, Hoyt & Co., a corporation—being about $12,500, there is no substantial controversy. Appellant contends that the evidence shows that he only owned 5 shares of the said stock at the time of the trial, and that it was only of the value of $60 per share, while the respondent contends that the evidence shows that he had 455 shares under his control, and that its value was over $300 per share. The evidence as to the number of shares under the control of or owned by appellant is conflicting, but we are of the opinion that the court was justified in finding therefrom. that the 455 shares of stock was either actually owned by, or was under the control of, the appellant. It is true that by the stock book of the company he appears to have had but 5 shares standing in his name at the time of the trial, but we are of the opinion that 250 shares issued in the name of A. C. Williams, brother of the appellant, 100 shares issued in the name of Thomas Williams, a cousin, and 100 shares issued in the name of the present wife of appellant having been transferred to these parties without consideration by appellant, should be considered as belonging to the appellant, or under his control. We shall consider the evidence of value under three heads: Value of the corporate property received from the old firm of Williams & Hoyt, value as indicated by net receipts and dividends, and value as indicated by sales of the stock by evidence of its market value.

The undisputed evidence is that the property of the corporation was derived from the firm of Williams & Hoyt, and was inventoried at the time the corporation was formed at about $110,000, including the good will of the firm. It does not appear from the evidence that any additions were made to the property of the corporation after the transfer to it by the firm Williams & Hoyt. The corporation was organized with a

capital stock of 1,000 shares, of the par value of $100 per share, making a total capital stock of $1C0,000. Of this appellant had issued to himself one half or 500 shares, and the other 500 were issued to Mr. Hoyt, the other member of the firm of Williams & Hoyt. Taking, then, the value of the property transferred to the corporation by the firm of Williams & Hoyt, which we have seen was $110,000, as a guide, we think $100 per share would be a fair cash value for the stock, as there would natur- ally be more or less depreciation in the value of machinery, etc., between 1888 and 1892. Its value as indicated by the net profits and dividends would seem to lead to about the same conclusion. It appears from the statements of Mr. Hoyt, made to the directors of the company, and who was the financial manager and bookkeeper, and who appears to have been a fair and candid witness, that the net receipts from June, 1888, to about January, 1892, were $53,000, of which, in round numbers, $25,000 was paid out in dividends and $28,000 carried as undi- vided profits. This would indicate about 15 per centum per annum profit. But during this time there were portions of the year in which the profits were exceedingly small. For in- stance, from January 17, 1891, to May 7, the net profits were only $3,083.76, and from May 7 to December 7, 1881, the net profits were only $1,872.31. Taking that year—the last of which we have a report—and the capital stock did not pay a profit of 5 per centum per annum. It is quite a noticeable fact, and Mr. Hoyt himself called attention to it, that during that year the appellant, who seems to have charge of the manufacturing de- partment, and was the general business manager, was absent from South Dakota. A stock of a corporation, therefore, de- pending so largely upon the personal management of one indi- vidual, must necessarily have a very uncertain value, and the only reliable data upon which to base its value is the property actually possessed by the corporation. Any other value must necessarily be speculative and uncertain, unless it has a fixed and market value indicated by actual sales. It appears from

the undisputed evidence that sales of a small quantity of stock were made at $60 per share, and Mr. Hoyt, who probably was as well informed as to the value of the stock as any other person, gave it as his opinion that $60 per share was a fair price for the stock. Mr. Thomas Williams placed a value of $100 per share upon the stock. He had long been an employe of the company, was acquainted with its business, and claimed to own 100 shares of the capital stock of the corporation. The only evidence of its value aside from that above given was the evidence of Patrick Cox, a brother of the respondent, a rival in the manufacturing business in which the Williams & Hoyt Company was engaged, and who admitted he was not on friendly terms with appellant. He gives it as his opinion that the stock was worth from $300 to $350 per share. But he admits that he had only a general knowledge of the company's business, had not been through its works for several years, and that his opinion was founded upon general reputation and conversations with different parties. In our opinion, this evidence is entitled to but little weight, and leaves the evidence of the value of the stock at $100 or less supported by a preponderance of the evidence, not only from the number of witnesses, but from the vastly superior means of knowledge of those witnesses who fix the value at $100 or less per share. The undisputed evidence shows that the business of Williams & Hoyt was established in 1872, and that at the time that Williams, Hoyt & Co. was incorporated, in 1888, the firm had accumulated property, including all profits which had been added to the capital, to the value of $110,000, which was turned over to the corporation. It will thus be seen that during a period of 16 years the firm had only accumulated the sum of $110,000, including all profits, over and above the expenses for that time. Yet the court, without sufficient evidence, concludes that in about four years the corporation had increased the value of its property to over $250,000, and in the meantime had divided a part of its profits.

Counsel for respondent insist that the amount paid as dividends and accumulated as undivided profits shows that the stock was of greater value than that placed upon it by appellant's witnesses, but, as stated by Mr. Hoyt in his evidence, that class of stock fluctuates greatly in value, depending as it does upon the market for the goods manufactured, change in management, and liability of depression in business. These changes are well illustrated in this case by the statements made by Mr. Hoyt to the directors, as before shown, in the year 1891. We are clearly satisfied from the evidence that the court in finding the value of appellant's stock above $100 per share found it of a value unwarranted by the preponderance of the evidence. As $100 per share was the value given by Thomas Williams, who seems to have been well acquainted with the business of the corporation, we shall take that as the value for the purposes of this decision. Assuming, then, that $100 per share was the fair value of the stock, the value of the appellant's property at the time of the trial was substantially as follows, as shown by the evidence:

| | |
|---|---:|
| 455 shares stock at $100 per share | $45,500 |
| Other personal property | 6,200 |
| Real property, less mortgage | 5,000 |
|     Total | $56,700 |

| | | |
|---|---:|---:|
| Temporary alimony | $ 800 | |
| Temporary alimony and counsel fees | 2,200 | |
| Alimony as per judgment | 30,000 | |
| | | $33,000 |

| | |
|---|---:|
|     Remaining for appellant | $23,700 |

The allowance of $30,000 by the court, therefore, was clearly excessive, in view of the fact that there are no children to be provided for by respondent. After a careful review of the evidence, we are of the opinion that the learned circuit court overestimated the value of appellant's property, and by reason thereof imposed too great a burden upon him, and that the allowance fixed by the court in its judgment should

be reduced.   Taking into consideration the fact that the appellant has paid as temporary alimony and counsel fees $800, and has been ordered to pay $2,200 more, we are of the opinion that an allowance of $15,000 to the respondent will be a just, reasonable, and suitable allowance for her, having regard to the circumstances of the parties respectively, the $18,000 being nearly one-third of appellant's entire property as shown by the evidence.

The counsel for appellant further contend that the judge by whom the circuit court of the Seventh circuit was held had no authority to hold said court at the time the judgment for alimony was rendered, and therefore the court had no jurisdiction to render the same.   But this contention cannot be sustained.   The judge who held the March term of that court for Judge Gardner was requested by him to hold the term, and the term at which said judgment was rendered was the adjourned March term.   The record fully establishes the fact that the judge was properly holding the term.   But, if this was not so shown, this court would presume that the judge presiding was properly requested to so preside.   Riggs v. Owen (Mo. Sup.) 25 S. W. 356.

The appellant also contends that the court had no authority to award alimony payable in one sum, instead of payable monthly or annually.   But we are of the opinion that our statute fully authorizes the court to render the judgment complained of.   The statute reads as follows:   "Where a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support during her life, or for a shorter period, as the court may deem just, having regard to the circumstances of the parties respectively; and the court may from time to time modify its orders in these respects."   Comp. Laws, sec. 2584.   The California Civil Code contains identically the same section; and in Robinson v. Robinson, 79 Cal. 511, 21 Pac. 1095, the question

was presented and fully considered.    In that case the court
says:    "The question is, had the court the power, under this
section, to require a gross sum to be paid to the plaintiff for
her support?   We think the language broad enough to confer
this power.   It will be observed that the allowance may be for
the wife's support during her life, and there is nothing limiting
it to periodical payments.    If it were so limited, it would be
possible, where no security had been required, for the husband
to dispose of all his property, and then go away or die, and thus
defeat the allowance altogether.    And this has been the prac-
tical construction of similar statutes in many other states."   In
Burrows v. Purple, 107 Mass. 432, Mr. Justice Gray, speaking for
the court, says:    "This court has long been vested, by succes-
sive statutes, with authority, upon granting to a wife a decree
of divorce, either from bed and board or from the bond of matri-
mony, to allow her reasonable alimony out of her husband's es-
tate.    And the practical construction of these statutes has
always been that such alimony might, at the discretion of the
court, be ordered to be paid in one gross sum, instead of being
made payable at stated periods.    In many other states also the
word 'alimony' is commonly used as equally applicable to all
allowances, whether annual or in gross, made to a wife upon a
decree of divorce under similar circumstances;" citing Parsons
v. Parsons, 309 N. H. 309;  Whittier v. Whittier, 31 N. H. 452;
Buckminster v. Buckminster, 38 Vt. 248;  Sanford v. Sanford,
5 Day, 353; Lyon v. Lyon, 21 Conn. 185; Piatt v. Piatt, 9 Ohio,
37; Hedrick v. Hedrick, 28 Ind. 291; Wheeler v. Wheeler, 18
Ill. 39; and Jeter v. Jeter, 36 Ala. 391.

Counsel for appellant further contend that the order made
by the circuit court on August 31, 1892, for the payment by ap-
pellant of $2,200 temporary alimony and counsel fees is an in-
termediate order, reviewable on appeal from the judgment.
But we cannot agree with the counsel in this contention.   An
intermediate order which can be reviewed on an appeal from
the judgment is one that involves the merits, and necessarily

affects the judgment. Comp. Laws, Sec. 5237. The order in this case is not one the affirmance, modification, or reversal of which would in any manner affect the judgment appealed from, and hence cannot be reviewed on this appeal from the judgment.

In conclusion it may be proper to state that, notwithstanding that under the views herein expressed the judgment for the $30,000 permanent alimony should be modified and reduced to $15,000, the appellant, by reason of his failure to comply with the order for temporary alimony and counsel fees, is not in a position to entitle him to ask for such modification. But in view of the fact that appellant's attempted appeal from said order was probably taken in good faith, we are of the opinion that upon the payment by him of the sum specified in said order, at Rapid City, S. D., to the counsel for respondent, on or before the 1st day of June, 1894, the judgment of the circuit court should be modified as herein indicated; the costs of this appeal to be taxed against the appellant. If, therefore, such payment shall be made within the time specified, a judgment in accordance with this opinion will be entered in this court.

FULLER, J., took no part in this decision.

Reporter—The publication of this opinion was delayed by order of court.