#27813, #27825-aff in pt & rev in pt-DG

**2017 S.D. 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *


MERVIN D. NICOLAY,                                   Plaintiff and Appellant,


    v.


DAVID D. STUKEL and K & K
MANAGEMENT SERVICES, INC.,              Defendants and Appellees.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *


MICHAEL D. BORNITZ
KIMBERLY R. WASSINK
ROBERT D. TRZYNKA
JONATHAN A. HEBER of
Cutler Law Firm, LLP
Sioux Falls, South Dakota                         Attorneys for plaintiff
                                                  and appellant.


DEREK A. NELSEN of
Fuller & Williamson, LLP
Sioux Falls, South Dakota                         Attorneys for defendants
                                                  and appellees.

* * * *

CONSIDERED ON BRIEFS
MARCH 22, 2017
OPINION FILED **07/26/17**

#27813, #27825

GILBERTSON, Chief Justice

[¶1.] Mervin D. Nicolay sued David D. Stukel and K & K Management Services, Inc., after Stukel's vehicle struck the rear of Nicolay's vehicle. Nicolay appeals from a jury verdict in favor of Stukel. Nicolay argues that he was entitled to summary judgment and that there was insufficient evidence to support the jury's verdict. He also argues the circuit court improperly admitted hearsay evidence. Stukel also appeals the circuit court's decision requiring him to pay a portion of the fee for an expert witness called by Nicolay. We reverse on the expert-witness-fee issue and affirm on the remaining issues.

## Facts and Procedural History

[¶2.] On January 31, 2011, Nicolay set out from his home in Nebraska City, Nebraska, driving north on Interstate 29 to Fargo, North Dakota. The day was cold with wind blowing from the east to the west across the Interstate. Aside from some snow drifting in the outside lane of travel, the road was clear. As Nicolay approached the North Dakota border, shortly before 1:00 p.m., he observed a snow plow cross the median and turn into the northbound lanes ahead of him. The plow traveled in the right-hand lane and shoulder at a speed of 35 to 40 miles per hour. Because the snow was dry and the wind was blowing across the Interstate, the plow created a fog of snow that obstructed the vision of anyone attempting to see down the inside lane. Nicolay did not see any vehicles ahead of or behind him (other than the plow), so he reduced his speed to between 35 and 45 miles per hour and decided to pass the plow.

-1-

[¶3.] A short time later, Stukel also approached the plow. Stukel had not seen Nicolay enter the snow fog. Stukel followed the plow for about a mile. Because he had not seen any other vehicles during that time, he also decided to pass the plow. Stukel reduced his speed to approximately 60 miles per hour.[1] As he began to enter the snow fog next to the plow, he first noticed Nicolay's white pickup a short distance ahead, traveling at a much slower speed. Stukel applied his brakes but was unable to avoid colliding with Nicolay's vehicle. The collision occurred in North Dakota.

[¶4.] North Dakota State Highway Patrolman Keith Huwe responded to the accident and interviewed the parties. Patrolman Huwe issued a $20 traffic citation to Stukel for passing while it was not safe to do so. Nicolay's vehicle sustained damage to the rear bumper but remained operational. Stukel's vehicle had to be towed from the scene. Nicolay and Stukel were both examined by emergency medical services, but both declined treatment.

[¶5.] Following the accident, Nicolay complained of pain in his lower back and extremities. On May 20, an MRI of his lower back indicated several of the discs and joints in his back had degenerated, and one disc was bulging. Over the next year, Nicolay attempted various courses of treatment. Faced with increasing pain, he sought medical care from neurosurgeon Dr. Stephen Doran on March 13, 2012. On March 29, Dr. Doran performed a disc-fusion surgery on Nicolay.

---

1. The posted speed limit was 75 miles per hour. Prior to approaching the plow, Stukel was traveling at 65 miles per hour.

[¶6.]        Nicolay filed an action against Stukel and K & K Management on February 14, 2013, alleging negligence and negligence per se. Stukel denied acting negligently and asserted several affirmative defenses, including assumption of risk and contributory negligence.[2] On August 4, 2014, Nicolay filed a motion for partial summary judgment on the issue of liability. The circuit court denied the motion on October 1. Afterward, Nicolay filed a motion asking the circuit court to apply North Dakota substantive law. The court granted the motion.

[¶7.]        Because an accident that occurred in North Dakota involved residents of South Dakota and Nebraska, the testimony of several witnesses was taken by recorded deposition. Two of those depositions give rise to issues in this appeal. In particular, the parties deposed Patrolman Huwe. During the deposition, Stukel's attorney asked Patrolman Huwe whether Nicolay had said he was "not actively passing" the plow (i.e., matching the plow's speed) at the time the accident occurred. After Patrolman Huwe said he could not remember Nicolay making that statement, Stukel's attorney showed Patrolman Huwe a newspaper article to refresh his memory. Nicolay's attorney objected, arguing the article lacked foundation.[3]

[¶8.]        The parties also deposed Dr. Doran. At the outset, Nicolay informed Stukel that he intended to pay for only one hour of Dr. Doran's time (at a cost of $4,000). Nicolay's attorney questioned Dr. Doran for about 35 minutes, asking

---

2.    Stukel also claimed to be "exempt from liability under the sudden-emergency doctrine" and under "North Dakota Century Code 26.1-41-08."

3.    The newspaper article states, in relevant part: "Mervin Nicolay Jr., Brandon, S.D., who was driving a pickup, was going about 35 mph, driving in the snow fog of the plow, but not actively passing, Huwe said."

about his credentials and the surgery Dr. Doran performed on Nicolay. On cross-examination, Stukel's attorney questioned Dr. Doran about Nicolay's history of neck and shoulder pain arising out of a work-related accident that occurred in 2008. Specifically, Stukel's attorney asked Dr. Doran about a previous surgery Nicolay underwent in January 2010 to fuse discs in his neck. Part way through cross-examination, Dr. Doran reminded the parties of the time limitation, and the parties terminated the deposition. Stukel requested a second deposition to finish cross-examination, and Nicolay objected, arguing the initial cross-examination was repetitive, irrelevant, and went beyond the scope of Nicolay's direct examination. The circuit court overruled all of Nicolay's objections but nevertheless ordered Stukel to pay the cost of continuing his cross-examination of Dr. Doran.

[¶9.] A jury unanimously found that Stukel was not negligent. The jury did not reach the issue of contributory negligence. Nicolay appeals, and the parties present the following issues for our review:

1. Whether the circuit court erred by denying Nicolay's motion for partial summary judgment on the issue of Stukel's liability.

2. Whether the circuit court erred by denying Nicolay's motion for a new trial.

3. Whether the circuit court erred by admitting Patrolman Huwe's deposition.

4. Whether the circuit court erred by requiring Stukel to pay a portion of Dr. Doran's expert-witness fee.[4]

---

4. Stukel raises this issue by notice of review.

Analysis and Decision

[¶10.]   *1.*  *Whether the circuit court erred by denying Nicolay's motion for partial summary judgment on the issue of Stukel's liability.*

[¶11.]  Nicolay first argues the circuit court erred by denying his motion for partial summary judgment on the issue of Stukel's liability for the collision. Nicolay contends Stukel is liable as a matter of law because he drove his vehicle at a speed that did not permit him to stop within the range of his vision. According to Nicolay, Stukel was aware of the snowy conditions around the plow, and therefore, his "attempt to pass when it was unsafe constitutes negligence." Nicolay also contends that Stukel violated a safety statute and that, therefore, his actions constitute negligence per se. Stukel responds that because Nicolay did not make a motion for judgment as a matter of law, the circuit court's denial of the summary-judgment motion is not reviewable on appeal. Stukel also contends that summary judgment was inappropriate because there were genuine issues of material fact. Finally, Stukel contends that his payment of the traffic ticket does not amount to negligence per se.

[¶12.]  As an initial matter, we must begin with Stukel's procedural argument that the circuit court's denial of Nicolay's motion for summary judgment is not reviewable in this appeal. Nicolay appeals from the circuit court's March 1, 2016 *judgment.* "Appeals to the Supreme Court from the circuit court may be taken . . . from . . . [a] judgment . . . ." SDCL 15-26A-3(1). "[O]n appeal from a judgment the Supreme Court may review *any* order, ruling, or determination of the trial court involving the merits and necessarily affecting the judgment and appearing upon the record." *DRD Enters., LLC v. Flickema*, 2010 S.D. 88, ¶ 15, 791 N.W.2d 180, 185

(emphasis added) (quoting SDCL 15-26A-7). The issue of liability obviously involves the merits of a negligence claim. The jury determined Stukel was not liable. Had the circuit court instead determined as a matter of law that Stukel was liable and that Nicolay was not contributorily negligent, then the judgment would necessarily be different. Thus, "[t]he order in this case is . . . one the affirmance, modification, or reversal of which would . . . affect the judgment appealed from, and hence [can] be reviewed on this appeal from the judgment." *Williams v. Williams*, 6 S.D. 284, 297, 61 N.W. 38, 41 (1894).

[¶13.] Even so, Stukel contends this Court reached the opposite conclusion in *Cowan Brothers, LLC v. American State Bank*, 2007 S.D. 131, 743 N.W.2d 411. In that case, the defendant requested summary judgment on all of the plaintiffs' claims, including its own affirmative defenses. *Id.* ¶ 10, 743 N.W.2d at 415. The circuit court denied the motion regarding the substantive portion of some of the plaintiffs' claims, but nevertheless granted summary judgment based on the defendant's affirmative defenses. *Id.* On appeal, the defendant sought review of the circuit court's partial denial of summary judgment. *Id.* ¶ 11, 743 N.W.2d at 415. We said: "Because this part of the circuit court's order is not a final judgment and there has been no 'express determination by the trial court that there was good cause to appeal,' the issue is interlocutory and unappealable." *Id.* (quoting *Big Sioux Twp. v. Streeter*, 272 N.W.2d 924, 925 n.1 (S.D. 1978)) (citing *Brasel v. City of Pierre*, 87 S.D. 561, 564 n.3, 211 N.W.2d 846, 848 n.3 (1973); *Nelsen v. Menno State Bank of Menno*, 53 S.D. 398, 398, 220 N.W. 850, 850 (1928)).

[¶14.]       In response, Nicolay cites *Carpenter v. City of Belle Fourche*, 2000 S.D. 55, 609 N.W.2d 751. In that case, the circuit court denied the defendants' motion for summary judgment on the plaintiff's negligence claim. *Id.* ¶ 1, 609 N.W.2d at 755. A jury found in favor of the plaintiff, and on appeal, the defendants sought review of the court's denial of the motion for summary judgment. *Id.* ¶ 5, 609 N.W.2d at 756. The plaintiff argued "the denial of summary judgment is not appealable because a final judgment was entered after a full trial on the merits." *Id.* ¶ 8 n.3, 609 N.W.2d at 757 n.3. We rejected this argument, noting that "[w]e have on numerous occasions reviewed the denial of a motion for summary judgment after a full trial has been held and a verdict on the merits has been reached." *Id.* (citing *Fritzel v. Roy Johnson Constr.*, 1999 S.D. 59, 594 N.W.2d 336; *Veeder v. Kennedy*, 1999 S.D. 23, 589 N.W.2d 610; *Weins v. Sporleder*, 1997 S.D. 111, 569 N.W.2d 16; *Smith v. Highmore Farm Ltd. P'ship*, 489 N.W.2d 908 (S.D. 1992)).

[¶15.]       There are problems with relying on either *Cowan Brothers* or *Carpenter*. The authorities cited in those cases do not directly address the question presented here. Neither *Streeter*, *Brasel*, nor *Nelsen* mention SDCL 15-26A-7. And in contrast to the present case, in which Nicolay seeks review of an interlocutory order as part of an appeal from a judgment, the plaintiff in *Nelsen* appealed solely from the denial of a motion for "judgment on the pleadings[.]" *Nelsen*, 53 S.D. at 398, 220 N.W. at 850. While *Carpenter* is correct in noting we have previously reviewed the denial of summary judgment on appeal, we were not called on to decide the propriety of such review in the cases cited in *Carpenter* for this proposition. *See Fritzel*, 1999 S.D. 59, ¶¶ 8-11, 594 N.W.2d at 338-39; *Veeder*,

1999 S.D. 23, ¶ 31, 589 N.W.2d at 617-18; *Weins*, 1997 S.D. 111, ¶ 15, 569 N.W.2d at 19-20; *Smith*, 489 N.W.2d at 910-11. Even so, *Carpenter* is consistent with the plain language of SDCL 15-26A-3 and -7, *supra* ¶ 12, which indicates that while the denial of a motion for summary judgment is interlocutory and may not ordinarily be *appealed* on its own, it is nevertheless *reviewable* on appeal from a final judgment.

[¶16.]     In light of the foregoing, we turn to the question whether the circuit court should have granted Nicolay's motion for summary judgment on the issue of liability. As noted above, South Dakota's substantive law applied at the time Nicolay submitted his motion for summary judgment. *See supra* ¶ 6. "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Gades v. Meyer Modernizing Co.*, 2015 S.D. 42, ¶ 7, 865 N.W.2d 155, 157-58 (quoting *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 5, 859 N.W.2d 618, 621). "We view the evidence 'most favorably to the nonmoving party and resolve reasonable doubts against the moving party.'" *Id.* ¶ 7, 865 N.W.2d at 158 (quoting *Peters*, 2015 S.D. 4, ¶ 5, 859 N.W.2d at 621). Whether a duty exists is a question of law; whether a defendant's conduct constitutes a breach of a duty is a question of fact. *Janis v. Nash Finch Co.*, 2010 S.D. 27, ¶ 8, 780 N.W.2d 497, 500-01.

[¶17.]     Nicolay contends the circuit court should have concluded Stukel was negligent as a matter of law. In South Dakota,

> [i]t is the duty of any person operating a motor vehicle upon a public highway . . . to keep such lookout for other users of the highway as a reasonably prudent person would maintain under the same or similar circumstances, and to have the motor

vehicle driven by him under such control that he can stop the
same, or otherwise avoid an accident, within his range of vision,
unless by reason of a condition or circumstances which could not
have been reasonably anticipated by an ordinarily prudent
person in like position, he could not stop or otherwise avoid an
accident.

*Nugent v. Quam*, 82 S.D. 583, 598-99, 152 N.W.2d 371, 379 (1967).[5] Nicolay asserts
"Stukel had been driving for miles prior to the collision and was aware of the road
conditions and of the presence of the snow plow[.]" Nicolay contends Stukel was
required "to drive at a speed that would allow him to stop within his limited range
of vision." Because Stukel was not able to stop in time to avoid the collision, Nicolay
concludes Stukel was negligent as a matter of law.

[¶18.] Nicolay's view of the rule stated in *Nugent* is incomplete. While the
general proposition that a driver should operate his vehicle in a manner that
permits him to avoid obstacles is unobjectionable, "like most other legal rules, [this
rule] has limitations." *Runge v. Prairie States Ins. of Sioux Falls*, 393 N.W.2d 538,
541 (S.D. 1986). Most notably, we have long held that "[t]he mere fact an accident
happened creates no inference that it was caused by someone's negligence." *Baddou
v. Hall*, 2008 S.D. 90, ¶ 27, 756 N.W.2d 554, 561 (quoting *Steffen v. Schwan's Sales
Enters., Inc.*, 2006 S.D. 41, ¶ 9, 713 N.W.2d 614, 618); *Saunders v. Chic. & N.W. Ry.
Co.*, 6 S.D. 40, 43-45, 60 N.W. 148, 149-50 (1894). Thus, "[t]he result must always
depend upon the circumstances of the particular case and nothing else." *Pleinis v.*

---

5.      Nicolay refers to this rule as the radius-of-lights rule, which is also called the
        assured-clear-distance rule by some authorities. 8 Am. Jur. 2d *Autos. &
        Hwy. Traffic* § 764, Westlaw (database updated July 2017); *see also Runge v.
        Prairie States Ins. of Sioux Falls*, 393 N.W.2d 538, 541 (S.D. 1986). The
        applicable law in South Dakota is the rule stated in *Nugent.*

*Wilson Storage & Transfer Co.*, 75 S.D. 397, 401, 66 N.W.2d 68, 71 (1954); *see also Murphy v. Hawthorne*, 244 P. 79, 80 (Or. 1926) (rejecting "hard and fixed rule that it is negligence to drive an automobile at such rate of speed that it cannot be stopped within the range of the driver's vision"); *Morehouse v. City of Everett*, 252 P. 157, 160 (Wash. 1926) (requiring motorist to "see any object which an ordinarily prudent driver under like circumstances would have seen"). "[A] driver [is simply required] to control the speed of his or her vehicle so that he or she will be able to stop within the distance of whatever *may reasonably be expected* to be within the driver's path." *Lockhart v. List*, 665 A.2d 1176, 1180 (Pa. 1995).

[¶19.]     Under the facts of this case, viewed most favorably to Stukel, we agree with the circuit court that Stukel was not negligent as a matter of law. In his statement of undisputed material facts, Stukel asserted that aside from infrequent snow drifts, the passing lane was dry and clear. He asserted he was driving 15 miles per hour less than the posted speed limit when he attempted to pass the plow. Stukel also asserted that before attempting to pass the plow, he followed it for about a mile and did not see any other vehicles enter the snow fog created by the plow. *See Runge*, 393 N.W.2d at 541 ("In the exercise of due care one must at all times see, *or know from having before seen,* that the road is clear, *or apparently clear*, and safe for travel, a sufficient distance ahead to make it apparently safe to advance at the speed employed." (emphasis added)). According to Stukel, Nicolay's vehicle was white and was completely obscured by the snow. It is also highly relevant that the accident occurred on Interstate 29—a controlled-access, divided highway. Whether an ordinarily prudent person would attempt to pass the plow

under these conditions—i.e., whether Stukel breached the duty of care stated above, *see supra* ¶ 17—presents a question of fact for the jury to resolve. *See Casillas v. Schubauer*, 2006 S.D. 42, ¶ 14, 714 N.W.2d 84, 88 ("[W]hether a breach of . . . duty occurred is for the finder of fact, not this Court.").

[¶20.]        We also reject Nicolay's contention that Stukel's payment of the traffic citation constitutes negligence per se. "Ordinarily, the violation of a statute or ordinance, unless under certain circumstances which are excusable or justifiable, constitutes negligence [p]er se if such violation is the proximate cause of the injury to the person for whose protection the statute was enacted." *Alley v. Siepman*, 87 S.D. 670, 674, 214 N.W.2d 7, 9 (1974). "Where the defendant *admits* a violation of a safety statute, negligence per se is established[,] and the issue of liability should not be submitted to the jury. However, where the defendant has legitimately raised the issue of reasonableness, juries are best equipped to resolve the conflicts." *Baddou*, 2008 S.D. 90, ¶ 27, 756 N.W.2d at 561 (emphasis added). Nicolay's argument is necessarily premised on the conclusion that Stukel violated a safety statute. While it is undisputed that Patrolman Huwe was convinced Stukel overdrove the weather conditions, Stukel has maintained throughout the course of this litigation that his actions were reasonable. "We, therefore, continue to decline to adopt a strict rule or presumption of negligence in cases involving rear end collisions." *Id.*

[¶21.]        Even if Nicolay had established Stukel's *negligence* as a matter of law, the issue of *liability* cannot be settled without first addressing Stukel's asserted affirmative defense of contributory negligence. If Stukel was negligent, Nicolay

would not be permitted to recover if his own conduct was more than slightly negligent when compared to Stukel's. SDCL 20-9-2. In Nicolay's statement of undisputed material facts, he claimed that "Stukel concede[d] that Nicolay did nothing to contribute to [the] collision[.]" In response, Stukel disputed this factual assertion and maintained that "[i]t remains a fact question for a jury whether [Nicolay] created a situation that resulted in an accident to which he contributed." Indeed, according to Stukel's version of events, Nicolay was essentially hiding in the snow fog, matching the plow's speed. A jury could reasonably conclude that such conduct amounted to contributory negligence barring recovery. Therefore, even if Stukel could be declared negligent as a matter of law, Nicolay was not entitled to summary judgment on Stukel's affirmative defense of contributory negligence, and the circuit court properly denied summary judgment on the issue of liability.

[¶22.]      **2.**      ***Whether the circuit court erred by denying Nicolay's motion for a new trial.***

[¶23.]      Nicolay next argues the circuit court erred by denying his motion for a new trial. Because the circuit court granted Nicolay's motion to apply North Dakota law, the substantive portion of this issue is governed by North Dakota law. However, South Dakota law controls the procedural aspects. "A new trial may be granted to all or any of the parties and on all or part of the issues for . . . [i]nsufficiency of the evidence to justify the verdict or other decision or that it is against law . . . ." SDCL 15-6-59(a)(6). But "[i]f the jury's verdict 'can be explained with reference to the evidence,' it should be affirmed." *Lewis v. Sanford Med. Ctr.*, 2013 S.D. 80, ¶ 16, 840 N.W.2d 662, 666 (quoting *Reinfeld v. Hutcheson*, 2010 S.D. 42, ¶ 8, 783 N.W.2d 284, 287). We review the "[d]enial of a motion for new trial . . .

under the abuse of discretion standard." *Baddou*, 2008 S.D. 90, ¶ 12, 756 N.W.2d at 558.

[¶24.]     Resolving this issue turns on the same analysis presented above in Issue 1. Although Nicolay convinced the circuit court to apply North Dakota law, he has failed to cite any statutes or controlling cases from North Dakota. Instead, Nicolay cites only South Dakota cases (which in this case, serve as persuasive authority) on this issue. Thus, Nicolay's argument is premised entirely on his incorrect view of applicable South Dakota law. But as explained above, under South Dakota caselaw, a reasonable jury could conclude that Stukel acted as an ordinarily prudent person under the circumstances—i.e., that he was not negligent. Stukel's trial testimony did not substantially differ from the facts he asserted during the summary-judgment proceedings. Therefore, for the reasons explained above, *see supra* ¶¶ 19-21, there is a sufficient evidentiary basis for the jury's verdict, and the circuit court did not abuse its discretion by denying Nicolay's motion for a new trial.[6]

---

6.     Citing *Cooper v. Rang*, 2011 S.D. 6, 794 N.W.2d 757, Nicolay also argues that Stukel was negligent because he did not "offer any evidence to support a 'non-negligent explanation' for the motor vehicle collision." In *Cooper*, we noted (in the concluding paragraph of the opinion) that the defendant "offered no non-negligent explanation for her rear end collision." *Id.* ¶ 10, 794 N.W.2d at 760. But this comment was simply an observation—not a new legal standard. Requiring a defendant to prove the absence of negligence is tantamount to establishing a presumption of negligence. As discussed above, such a standard would be contrary to a long line of cases dating back to the earliest days of this Court. *See Baddou*, 2008 S.D. 90, ¶ 27, 756 N.W.2d at 561 ("The mere fact an accident happened creates no inference that it was caused by someone's negligence." (quoting *Steffen*, 2006 S.D. 41, ¶ 9, 713 N.W.2d at 618)); *Saunders*, 6 S.D. at 43-45, 60 N.W. at 149-50.

[¶25.]     *3.     Whether the circuit court erred by admitting Patrolman Huwe's deposition.*

[¶26.]     Prior to trial, the parties deposed Patrolman Huwe. During the deposition, Stukel's attorney asked Patrolman Huwe about comments Stukel believed Nicolay made to Patrolman Huwe following the accident. In the course of questioning, Stukel's attorney showed Patrolman Huwe a newspaper article to refresh his memory. Nicolay's attorney objected, arguing the article lacked foundation. Stukel subsequently offered a transcript of Patrolman Huwe's deposition as an exhibit at trial. Nicolay argues that in doing so, "Stukel improperly used refreshing recollection to get otherwise inadmissible evidence into the record that Nicolay was not 'actively passing' at the time of the accident."

[¶27.]     This argument is meritless. Nicolay does not assert the newspaper article was ever submitted into evidence or read to the jury; rather, it was only shown to Patrolman Huwe after he said he was unable to recall a conversation referred to by Stukel's attorney. When a writing is used to refresh the recollection of a witness, "it is generally agreed that it need not have been authored by the witness, need not have been made contemporaneous with the matters described therein, need not be an original, and need not be admissible or even reliable." 28 Victor James Gold, *Federal Practice and Procedure: Evidence* § 6184 (2d ed.), Westlaw (database updated April 2017) (footnotes omitted); *see also United States v. Weller*, 238 F.3d 1215, 1221 (10th Cir. 2001) ("[A]nything may be used to refresh a witness' recollection, *even inadmissible evidence.*" (emphasis added)). As for the circumstances under which a writing may be used to refresh a witness's recollection, we have long held that

> [a] memorandum made by another person may be used to refresh the recollection of a witness, provided that, after inspecting it, the witness can testify from his own recollection, or remembers having seen it when his memory as to the facts was still fresh, and recollects that he then knew the statements therein to be correct[.]

*Brown v. Smith*, 24 S.D. 231, 236, 123 N.W. 689, 691 (1909). Before viewing the article, Patrolman Huwe said he remembered giving a statement that was recorded after the accident,[7] but he could not specifically remember whether Nicolay admitted he was not actively passing the plow at the time of the accident. After viewing the article, Patrolman Huwe acknowledged making the particular statement at issue[8] but maintained that he still could not say whether Nicolay was the source of his conclusion. Thus, it is clear Patrolman Huwe's testimony after reviewing the newspaper article reflected his own recollection of the accident and was not simply a recitation of the article.

[¶28.]     ***4.      Whether the circuit court erred by requiring Stukel to pay a portion of Dr. Doran's expert-witness fee.***

[¶29.]     Finally, by notice of review, Stukel argues the circuit court improperly required him to pay the cost of continuing his cross-examination of Dr. Doran. As

---

7.    Before Patrolman Huwe reviewed the article, the following exchange occurred during his deposition:

> **[Stukel's Attorney]**: You recall that you gave certain statements that were recorded after the motor vehicle accident?
>
> **[Patrolman Huwe]**: Yes, sir.

8.    After Patrolman Huwe reviewed the article, the following exchange occurred during his deposition:

> **[Stukel's Attorney]**: I'm going to reshow you the document. This includes your statements shortly after the accident?
>
> **[Patrolman Huwe]**: Right.

Stukel points out, "[t]he fee of an expert witness called by a party but not appointed by the court shall be paid *by the party by whom he was called*, and the amount of such fee shall be disclosed if requested upon cross-examination." SDCL 19-19-707(b) (emphasis added). However, "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility." SDCL 19-19-611(b).[9] There is no dispute that Nicolay called Dr. Doran to testify and that Dr. Doran was not appointed by the court. Instead, Nicolay argues that Stukel's cross-examination of Dr. Doran was repetitive, went beyond the scope of the direct examination, did not address Dr. Doran's credibility, and was not relevant. In other words, Nicolay essentially argues that regardless of who initially called Dr. Doran to testify, Dr. Doran became Stukel's witness if Stukel's cross-examination went beyond the scope of Nicolay's direct examination.[10]

[¶30.] The real question in this case, then, is whether Stukel's cross-examination of Dr. Doran did, in fact, exceed the scope of direct examination or credibility issues. The circuit court's decision on this question "will be reversed only

---

9. This is a general rule. During cross-examination, "[t]he court may allow inquiry into additional matters as if on direct examination." SDCL 19-19-611(b).

10. Nicolay also contends that he informed Stukel ahead of time that Nicolay intended to pay for only one hour of Dr. Doran's time. Regardless, Nicolay offers no authority for the proposition that a party who calls an expert witness can unilaterally and arbitrarily impose time limits on his adversary's right of cross-examination. Rather, it is the circuit court that has the power to limit cross-examination directly. *See* SDCL 19-19-611; *City of Sioux Falls v. Johnson*, 1999 S.D. 16, ¶ 18, 588 N.W.2d 904, 909 ("The [*circuit*] *court* retains broad discretion concerning the limitation of cross-examination . . . ." (emphasis added)).

when there is a clear abuse of . . . discretion and a showing of prejudice." *City of Sioux Falls v. Johnson*, 1999 S.D. 16, ¶ 18, 588 N.W.2d 904, 909 (quoting *State v. Koepsell*, 508 N.W.2d 591, 595 (S.D. 1993)). Nicolay's attorney questioned Dr. Doran about the link between the 2011 accident and Nicolay's symptoms that required Dr. Doran to perform back surgery on Nicolay in 2012. On cross-examination, Stukel's attorney questioned Dr. Doran about Nicolay's preexisting conditions stemming from his 2008 injury and 2010 neck surgery. He inquired whether some of the symptoms Nicolay reported to Dr. Doran could be explained by Nicolay's preexisting neck condition. Nicolay's attorney made numerous objections based on scope and relevance. At a hearing to consider the objections, the court overruled all of Nicolay's objections. The court reasoned: "[Stukel] was cross-examining [Nicolay's] witness with respect to [Nicolay's] injuries that [Dr. Doran] has said were aggravated by this accident that [Nicolay is] suing [Stukel] over." Under the circumstances, we cannot say the circuit court's conclusion was an abuse of discretion.

[¶31.] However, because the circuit court did not abuse its discretion in determining Stukel's cross-examination remained within the scope of Nicolay's direct examination, the circuit court necessarily erred when it required Stukel to pay the cost of finishing his cross-examination of Nicolay's expert witness. Because the court concluded Nicolay's preexisting conditions were "fair game," Stukel's cross-examination was proper. Therefore, Dr. Doran was properly considered Nicolay's witness, and Nicolay was responsible for paying his expert-witness fee.

## Conclusion

[¶32.] The circuit court properly denied Nicolay's motions for summary judgment and a new trial. Nicolay's view of South Dakota's negligence law is fundamentally flawed. According to the rule expressed in *Nugent*, a reasonable jury could have concluded that under the circumstances of this case, Stukel acted reasonably even though an accident occurred. Neither was Stukel's use of a newspaper article to refresh Patrolman Huwe's recollection reversible error. Finally, the circuit court did not abuse its discretion in concluding Stukel's cross-examination of Dr. Doran was proper. However, because the circuit court so concluded, the court erred by requiring Stukel to pay the cost of finishing his cross-examination.

[¶33.] We reverse on the expert-witness-fee issue and affirm on the remaining issues.

[¶34.] ZINTER, SEVERSON, and KERN, Justices, and WILBUR, Retired Justice, concur.